Eloise Pepion COBELL, et al., Plaintiffs,

v.

Bruce BABBITT, Secretary of the Interior, et al., Defendants.

Civil No. 96–1285(RCL).

United States District Court, District of Columbia.

Nov. 5, 1998.

Thaddeus Holt, Dennis M. Gingold, AU-KAMP & Gingold, Washington, DC, Keith M. Harper, Robert M. Peregoy, Native American Rights Fund, Washington, DC, for Plaintiffs.

Andrew M. Eschen, Lewis Wiener, Connie Lundgren, U.S. Department of Justice, Environmental & Natural Resources Division, General Litigation Section, Washington, DC, Edith R. Blackwell, U.S. Department of Interior, Washington, DC, for Defendants.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

### I. *Introduction*

This matter comes before the Court on the following motions: (1) defendants Bruce Babbitt, Kevin Gover,[1] and Robert E. Rubin's Consolidated Motion for Judgment on the Pleadings, and in the Alternative, Motion to Dismiss or Motion for Summary Judgment on Plaintiffs' Demand for Prospective Relief; (2) Defendants' Consolidated Motion to Dismiss Plaintiffs' Claim for Retrospective Relief; (3) Defendants' Motion to Adopt Defendants' Sampling Approach; and (4) Plaintiffs'

Motion to Strike Extraneous Materials. Upon consideration of these motions, along with both parties' opposition, reply, and supplemental memoranda, the Court will (1) DENY Defendants' Consolidated Motion for Judgment on the Pleadings, and in the Alternative, Motion to Dismiss or Motion for Summary Judgment on Plaintiffs' Demand for Prospective Relief except that the plaintiffs' claims for a writ of mandamus against defendants Bruce Babbitt and Kevin Gover will be dismissed without prejudice; (2) DENY Defendants' Consolidated Motion to Dismiss Plaintiffs' Claim for Retrospective Relief; (3) DENY Defendants' Motion to Adopt Defendants' Sampling Approach; and (4) DENY Plaintiffs' Motion to Strike Extraneous Materials.

### II. *Facts*

This class-action suit involves the government's alleged mismanagement of Individual Indian Money (IIM) trust accounts. The plaintiffs seek declaratory, injunctive, and mandamus relief against the parties allegedly responsible for the administration of the trust. The defendants now move to dismiss the plaintiffs' Complaint and for summary judgment. These motions raise important issues of jurisdiction, limitations, and administrative review. The Court will deny the defendants' motion for summary judgment as premature. In addition, the Court will deny all of the other motions, except insofar as the defendants seek dismissal of the plaintiffs' mandamus claims against the Secretary of the Interior, Bruce Babbitt, and the Assistant Secretary of the Interior, Kevin Gover.

As explained below, the Court expects that it will be asked to rule at the summary judgment stage on various arguments put forward by the defendants in their motion to dismiss. The Court's delayed determination of these issues comports with the case law that places restrictions upon a district court's review at the motion to dismiss phase. Moreover, a postponed determination of certain issues furthers an orderly administration of justice, even though the Court recognizes

---

**1.** Kevin Gover, the current Assistant Secretary of the Interior—Indian Affairs, is substituted as a party to this action pursuant to Fed.R.Civ.P. 25(d)

as the successor of Ada Deer, who was an originally named defendant.

that there would be a certain advantage to resolving all of these issues now.

The arguments presented by both parties demand a thorough understanding of the entire IIM trust account system. In this system, the United States acts as trustee of accounts that hold money on behalf of individual Indian beneficiaries. At the time the plaintiffs' Complaint was filed in June 1996, these accounts allegedly reflected a balance of $450,000,000, with more than $250,000,000 dollars passing through the IIM accounts each year. Hence, the stated balances of the individual accounts should now add up to nearly one billion dollars.

The IIM accounts hold money that originates from various sources, but a majority of the funds are derived from income earned off of individual land allotments. These allotments date back to 1934, pursuant to a United States government policy of breaking up Indian tribes and tribal lands. In implementing this policy, the bulk of the tribal lands were divided into tracts, generally of 80 or 160 acres. These tracts were patented to individual Indians, with legal title held by the United States as trustee. These land allotments held in trust by the government generated income by the lease of their grazing, farming, timber, and mineral rights.

On February 4, 1997, the Court certified the named plaintiffs under FED.R.CIV.P. 23(b)(1)(A) and (b)(2) as representatives of a class consisting of all present and former beneficiaries of the IIM accounts. This class apparently includes over 300,000 Indian individuals. The plaintiffs allege that the defendants are the officers charged with the duties of carrying out the obligations of trustee with regard to the IIM accounts. The plaintiffs further allege that, as trustees, the defendants owe the plaintiffs typical trustee

duties. These alleged obligations include the duties of maintaining an adequate accounting and records system, investing the funds in the accounts prudently, reporting to the beneficiaries, and refraining from self-dealing.

Congress reconfirmed the defendants' duties with regard to the IIM accounts in 1994 by passing § 101 of the Indian Trust Fund Management Reform Act, 25 U.S.C. § 162a(d). This act codified several obligations of the Secretary of the Interior with regard to the discharge of his trust duties.[2] *See* 25 U.S.C. § 162a(d) (Supp.1998). Next, Congress created the position of Special Trustee for American Indians to oversee the trust administration process. *See* 25 U.S.C. § 4042. The Special Trustee holds a sub-cabinet level position, appointed by the President with the advice and consent of the Senate, and reports directly to the Secretary of the Interior. *Id.*

The office of the Special Trustee has three statutorily mandated purposes: (1) "to provide for more effective management of, and accountability for the proper discharge of" the Secretary of the Interior's trust responsibilities to the Indian people; (2) to ensure that these reforms are carried out in a unified manner; and (3) "to ensure the implementation of all reforms necessary for the proper discharge of the [Secretary of the Interior's] trust responsibilities" to the Indian people. *Id.* § 4041. Along with a responsibility to submit to the Secretary of the Interior and Congress a comprehensive plan on how to properly and efficiently discharge the Secretary's trust responsibilities, the Special Trustee was given general oversight and monitoring duties with regard to trust administration. *See id.* § 4043.

The Complaint alleges several instances of trust mismanagement, all of which can be

---

2. Section 162a(d) states that the Secretary of the Interior's proper discharge of trust responsibilities includes:

(1) Providing adequate systems for accounting for and reporting trust fund balances.

(2) Providing adequate controls over receipts and disbursements.

(3) Providing periodic, timely reconciliations to assure the accuracy of accounts.

(4) Determining accurate cash balances.

(5) Preparing and supplying account holders with periodic statements of their account per-

formance and with balances of their account which shall be available on a daily basis.

(6) Establishing consistent, written policies and procedures for trust fund management and accounting.

(7) Providing adequate staffing, supervision, and training for trust fund management and accounting.

(8) Appropriately managing the natural resources located within the boundaries of Indian reservations and trust lands.

25 U.S.C. § 162a(d).

grouped into two general classifications—breach of trust[3] and interference with the Special Trustee's duties.[4] The plaintiffs further allege that they have no adequate administrative remedies, that they have requested the defendants to comply with their obligations, and that they have supported legislation that deals with the defendants' mismanagement of the IIM accounts. Nonetheless, according to the plaintiffs, because the defendants have failed to adequately discharge their duties, they have initiated this lawsuit for prospective and retrospective relief.

Based on these acts of trust mismanagement, the plaintiffs seek five types of relief. First, the plaintiffs ask for a declaration of defendants' trust obligations to the IIM account beneficiaries, in addition to a declaration that the defendants have breached and continue to breach these duties. Second, the plaintiffs request that this court direct the agencies to bring their accounting practices into conformity with their trust obligations. Third, the plaintiffs seek to enjoin the defendants from hindering or interfering with the Special Trustee in the carrying out of his statutory duties, including an order directing the defendants to cooperate and facilitate the performance of those duties. Fourth, the plaintiffs request an accounting. Fifth, the plaintiffs seek recovery for their court costs, experts' costs, and attorneys' fees.

The defendants seek a dismissal of the plaintiffs' claims on three grounds. First, the defendants argue that this court lacks jurisdiction over this matter for a variety of reasons. Next, the defendants move for judgment on the pleadings. Finally, the defendants seek summary judgment on all of the plaintiffs' claims. Because each of these challenges involves a different standard of proof, the Court will summarily explain the standard implicated by each motion.

### III. The Standards Implicated by the Pending Motions

#### A. Motion for Summary Judgment

Defendants have moved for summary judgment on each of the plaintiffs' claims. The Court will deny the defendants' motion for summary judgment in each regard as premature. The parties are currently proceeding under an ongoing discovery scheduling order issued by this Court on May 5, 1998. To consider summary judgment before the completion of this discovery would clearly be improper on the facts of this case. The plaintiffs are attempting to gather information necessary to defend various factual arguments asserted by the defendants. The plaintiffs have filed affidavits to this effect, as required by FED.R.CIV.P. 56(f).[5] Based on these affidavits, it appears that the plaintiffs would not be able at this time to present essential facts needed to justify their position in this case. Therefore, because summary judgment would be premature, the defendants' motion for summary judgment will be denied.

#### B. Motion for Judgment on the Pleadings

A district court should render judgment on the pleadings pursuant to Federal Rule of

---

3. The plaintiffs allege that the defendants have failed to keep adequate records and install an adequate accounting system, destroyed records bearing upon their breaches of trust, failed to account to the trust beneficiaries, and lost, dissipated, or converted to the United States' own use the money of the trust beneficiaries.

4. The plaintiffs allege that defendants Babbitt and Gover have prevented, combined, and conspired to prevent the Special Trustee from carrying out his duties to correct unlawful practices and procedures with regard to IIM accounting. The specific acts of interference complained of include the Secretary of Interior's returning of uncommitted appropriated funds to the Treasury rather than applying them to the Special Trustee's duties, refusing to request adequate funds

for the Special Trustee's work, preventing the Special Trustee from preparing his statutorily mandated plan, refusing to permit the Special Trustee from conducting necessary surveys, preventing the Special Trustee's advisory board from meeting, and refusing to permit the Special Trustee to employ adequate staff and expert consultants.

5. Rule 56(f) states:

Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment....

FED.R.CIV.P. 56(f).

Civil Procedure 12(c) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). All allegations contained in the Complaint must be accepted as true. *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). All factual doubts must be resolved and all inferences made in favor of the plaintiff. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." 2A MOORE'S FEDERAL PRACTICE § 12.07, at 63 (2d ed.1986) (footnote omitted); *see also Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir.1987) (citing *Pauling v. McElroy*, 278 F.2d 252, 254 (D.C.Cir.1960)).[6]

IV. *Defendants' Consolidated Motion for Judgment on the Pleadings on the Plaintiffs' Demand for Prospective Relief*

A. *Subject Matter Jurisdiction and Sovereign Immunity*

1. *Parties' Arguments*

The plaintiffs' Complaint alleges federal question jurisdiction under 28 U.S.C. § 1331, mandamus jurisdiction under 28 U.S.C. § 1361, and a waiver of sovereign immunity under 5 U.S.C. §§ 701–706. The defendants argue that the APA provides only a limited waiver of sovereign immunity and that the plaintiffs' claims therefore must be analyzed under the APA's terms. Such an analysis, in the defendants' view, reveals several conclusions. First, Congress has committed the

agencies' tasks with regard to the IIM accounts to the sole discretion of the Secretary of the Interior and the Special Trustee. Second, the defendants have taken no agency action for the purposes of the APA. Third, no final agency action exists under the APA.

The plaintiffs respond by arguing that because their prospective claim is for equitable relief—*i.e.*, a claim for something "other than money damages" for the purposes of 5 U.S.C. § 702—the government has waived its sovereign immunity. Next, the plaintiffs argue that a lack of agency action or final agency action presents no bar to their case for three reasons: (1) because theirs' are claims of agency inaction, relying on a line of case law generally standing for the proposition that agency inaction can also serve as final agency action. *See, e.g., Sabella v. United States*, 863 F.Supp. 1, 4 (D.D.C.1994); (2) because the bulk of their suit does not arise under the APA since they seek relief based on equitable principles of trust law and the APA provides a waiver of sovereign immunity in such actions; and (3) because, to the extent the plaintiffs assert APA claims, the High Level Implementation Plan and current accounting system provide reviewable, final agency action.

In the end, the parties fundamentally disagree on the proper characterization of this case. The plaintiffs assert that their action is equitable in nature, primarily arises under statutory and federal common law trust doctrines, and also states claims under the APA. The defendants implicitly seek to pigeon-hole the plaintiffs' Complaint solely into the APA, although they provide no support for that fundamental proposition.[7] Against this back-

---

**6.** The standard of review implicated by a Rule 12(b)(6) motion to dismiss is "virtually identical." *Haynesworth*, 820 F.2d at 1254. Because the defendants have already filed an answer in this case, their motion will be treated as a motion for judgment on the pleadings where appropriate.

**7.** The defendants choose to ignore the plaintiffs repeated assertions, as expressed in both the plaintiffs' Complaint and memoranda, that they aver claims under the APA and outside the APA. Both types of actions are cognizable theories under the law. *See* PAUL M. BATOR ET AL., HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 1091–97 (3d ed.1988). Professor Bator

and his co-authors have summarized this basic point in the following succinct manner:

> The development of remedies against federal ... agencies follows two important paths. The first, nonstatutory review, involves the system of remedies generally available against any defendant in judicial proceedings. The remedies may be derived from the common law (as with ... injunctions ...). The second path, statutory review, involves more specialized remedies created by Congress for the distinctive purpose of reviewing the actions of federal ... agencies.

*Id.* at 1091. Under this scheme, a common law action for an accounting or injunction based on a

drop, this Court must decide whether it lacks jurisdiction over any portion of this matter and, assuming it does not, whether any of the plaintiffs' claims are otherwise dismissible on the pleadings.

### 2. *Applicable Law and Analysis*

As a threshold matter, the Court notes that it has original jurisdiction of the plaintiffs' suit for prospective relief because it is a "civil action[ ] arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Although the defendants do not focus their jurisdictional attacks on original jurisdiction, instead relying on the doctrine of sovereign immunity, the Court notes that the plaintiffs' claims arise from rights allegedly granted to them by 29 U.S.C. § 162a and the federal common law of Indian trust management. *See infra* section IV(D)(2) (explaining this same jurisdictional basis in the context of retrospective relief).

 Nonetheless, this Court must decide whether the doctrine of sovereign immunity bars the plaintiffs' prospective action against the government. It is axiomatic that the United States may not be sued without its consent. *See Minnesota v. United States,* 305 U.S. 382, 388, 59 S.Ct. 292, 83 L.Ed. 235 (1939). The plaintiffs point to the APA, 5 U.S.C. § 702, as the applicable waiver of sovereign immunity in this case. Section 702 states, in part, the following:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States....

5 U.S.C. § 702. Issues of sovereign immunity in the context of injunctive relief against federal officers of the United States must be resolved with reference to § 702. *See Schnapper v. Foley,* 667 F.2d 102, 108 (D.C.Cir.1981). Section 702 retains the sovereign immunity defense in actions for injunctive relief only when another statute expressly or implicitly forecloses equitable relief.[8] *See id.* The § 702 waiver of sovereign immunity in actions seeking relief other than money damages against the government also applies to claims brought outside the purview of the APA, such as some of the claims involved in the case at bar. *See Chamber of Commerce v. Reich,* 74 F.3d 1322, 1328 (D.C.Cir.1996) ("The APA's waiver of sovereign immunity applies to any suit whether under the APA or not." (citations omitted)); *Clark v. Library of Congress,* 750 F.2d 89, 102 (D.C.Cir.1984) ("With respect to claims for non-monetary relief, the 1976 amendments to § 702 of the Administrative Procedure Act ... eliminated the sovereign immunity defense in virtually all actions for non-monetary relief against a U.S. agency or officer acting in an official capacity." (citations omitted)); *Dronenburg v. Zech,* 741 F.2d 1388, 1390 (D.C. Cir.1984) ("We are further bound by another decision of this court holding that 'the United States and its officers ... are not insulated from suit for injunctive relief by the doctrine of sovereign immunity.'" (quoting *Schnapper,* 667 F.2d at 107)); *Schnapper,* 667 F.2d at 108 ("The clarity and force of the legislative history leaves this court with no alternative but to conclude that all questions of the amenability of a federal officer to a suit for injunctive relief must be decided with reference to section 702.... And section 702 retains the defense of sovereign immunity only when another statute expressly or implicitly forecloses injunctive relief." (citations omitted)); *Sea–Land Serv., Inc. v. Alaska R.R.,* 659 F.2d 243, 244 (D.C.Cir.1981) ("[A]mended

breach of trust theory would fall under the first prong of nonstatutory review, and an APA review action would fall under the second prong of statutory review. *See id.* at 1096.

8. As recognized by the *Schnapper* court, the legislative history of § 702 provides abundant support for this interpretation. *See* S.Rep. No. 966, 94th Cong., 2d Sess., at 7–8 ("[T]he time [has] now come to eliminate the sovereign immunity

defense in *all* equitable actions for specific relief against a Federal agency or officer acting in an official capacity...." (emphasis added)); *id.* at 2 (noting that § 702 was intended "to eliminate the defense of sovereign immunity with respect to *any* action in a court of the United States seeking relief other than money damages and based on the assertion of unlawful action by a Federal officer" (emphasis added)).

§ 702 eliminates the defense of sovereign immunity in actions for specific, nonmonetary relief. . . ." (footnote and citation omitted)); *see also supra* note 7 (providing the legislative history that explicitly states the intent of § 702 was to waive sovereign immunity in "all equitable actions for specific relief" against a federal officer acting in an official capacity, with respect to "any action in a court of the United States.").

▪ The case law and legislative history with respect to § 702 clearly evince the federal government's consent to suit in the present case. The plaintiffs' prospective request for an injunction is an action for relief "other than money damages." The plaintiffs have sued federal officers for actions taken, or not taken, in their official capacity. Therefore, Congress has directed that the plaintiffs' suit "shall not be dismissed nor relief . . . denied on the ground that it is against the United States." 5 U.S.C. § 702. Sovereign immunity does not bar the plaintiffs' suit seeking injunctive relief.[9]

▪ The defendants' contention that the administration of its trust duties is unreviewable because the duties are committed solely to agency discretion also fails. Section 701 provides that the provisions of the APA do not apply to the extent that "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Because the relevant waiver of sovereign immunity for the present case is a provision of the APA, the Court must examine whether the defendants correctly posit the amount of discretion given to them by Congress.

▪ The APA establishes a strong presumption of the reviewability of agency action. *See Abbott Labs. v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The statutory exemption to judicial review of actions falling within § 701(a)(2) is a "very narrow one." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Defendants seeking to invoke this exception must show by clear and convincing evidence that Congress intended to restrict access to judicial review. *See id.; Abbott Labs.,* 387 U.S. at 141, 87 S.Ct. 1507. "The legislative history of the [APA] indicates that it is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park,* 401 U.S. at 410, 91 S.Ct. 814 (quoting S.Rep. No. 752, 79th Cong., 1st Sess., at 26 (1945)).

The defendants have failed to marshal sufficient evidence to show that Congress intended to restrict judicial review of the discharge of their trust duties. The defendants admit that Congress never foreclosed judicial review explicitly, as it surely could have. Instead, the defendants argue that the com-

---

9. Defendants attempt, without citation, to tie the concept of final agency action to the defense of sovereign immunity. *See Defendants' Memorandum of Points and Authorities in Support of Motion for Judgment on the Pleadings, and in the Alternative, Motion to Dismiss or Motion for Summary Judgment on Plaintiffs' Demand for Prospective Relief* at 12 ("The [APA] . . . provides a limited waiver of sovereign immunity. Consequently, the plaintiffs' substantive claim and demand for relief must be analyzed under the constraints of that statute.") Although the necessity of final agency action bears upon this Court's power to hear a suit brought under the APA, it does not affect the Court's sovereign immunity analysis *per se.* Furthermore, the plaintiffs rely on the APA for its waiver of sovereign immunity outside of the APA-review context, as well. The plaintiffs do not solely seek relief or review under the APA of the defendants' actions, and the defendants have offered no persuasive reasons for why they must. Hence, the defendants' attempts to fit a final-agency-action inquiry into a sovereign immunity argument fails on two levels.

In addition, it appears the Supreme Court, in dicta, has concluded that the government has waived its sovereign immunity on facts similar to the instant case. In *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) ("*Mitchell II* "), beneficiaries of an Indian trust fund brought suit against the government seeking retrospective monetary relief for alleged breaches of trust duties, in part, derived from 29 U.S.C. § 162a. *Id.* at 227, 103 S.Ct. 2961. In *Mitchell II,* the government contended that retrospective monetary relief was inappropriate, but "that violations of duties imposed by the various statutes may be cured by actions for declaratory, injunctive or mandamus relief against the Secretary [of the Interior], although it concedes that sovereign immunity might have barred such suits before 1976." *Id.* Although the government has chosen to take the exactly opposite tact in the case at bar, the Supreme Court nonetheless recognized that "[i]n 1976 Congress enacted a general consent to such suits," citing 5 U.S.C. § 702. *Id.* at 227 n. 32, 103 S.Ct. 2961.

plexity of the trust management system implicitly shows such a preclusion. The defendants rely upon the statutory language of 25 U.S.C. § 162a and 25 U.S.C. § 4042 but point to no legislative history to support their position.

Although the Court agrees that the IIM accounting system is rather complex, the statutory language relied upon by the defendants falls well short of evidencing a congressional intent to preclude judicial review by any standard, much less under the exacting clear and convincing standard provided by the Supreme Court. For example, 25 U.S.C. § 162a(d), upon which the plaintiffs base many of their claims, states that "[t]he Secretary's proper discharge of the trust responsibilities of the United States *shall* include (but are not limited to)" a list of typical trust duties. 25 U.S.C. § 162a(d) (emphasis added); *see also supra* note 1 (listing the various trust duties). It would have been difficult for Congress to choose less discretionary language with regard to the trust duties sued upon in this case, despite the complexity of the IIM accounting system. Moreover, the defendants do not attempt to prove and cannot show that there would be no law to apply in a judicial assessment of the government's discharge of its trust duties. As trustee, the government would be held to the same types of standards as all trustees and governed by the law of trusts. *See Mitchell II*, 463 U.S. at 226, 103 S.Ct. 2961.

In sum, the defendants have failed to show that Congress committed the trust duties sued upon solely to agency discretion as a matter of law for the, purposes of 5 U.S.C. § 701(a)(2). Therefore, the plaintiffs may rely on the APA's waiver of sovereign immunity in actions seeking remedies other than money damages. *See* 5 U.S.C. § 702.

■ Of course, a waiver of sovereign immunity does not end the analysis. The defendants have based much of their motion for judgment on the pleadings on the premise that the plaintiffs can point to no reviewable final agency action, as required by 5 U.S.C. § 704 for actions brought under the APA.

This argument fails for two reasons. First, the plaintiffs primarily assert a claim that does not implicate the APA. Instead, they sue under the law of trusts for breaches of trust duties by the trustee who, in this case, is the government. Again, the Supreme Court has looked to this substantive body of law to define the duties and remedies afforded to the beneficiaries of the Indian trust relationship. *See Mitchell II*, 463 U.S. at 226, 103 S.Ct. 2961. The defendants have not contested the premise that the plaintiffs can sue for breaches of trust duties based on legal authority outside the context of the APA, and the APA clearly allows such suits to be brought. *See Chamber of Commerce*, 74 F.3d at 1328 (discussing the defense of sovereign immunity as it applies to "any suit whether under the APA or not"); *see also supra* note 6. The defendants seek from the beginning to constrain the plaintiffs' claims to the APA, but such a characterization simply does not comport with the facts alleged and the allegations set forth in the Complaint. Therefore, to the extent that the plaintiffs state a claim for equitable relief for breach of trust duties, the defendants' motion for judgment on the pleadings must be denied.

■ Second, the plaintiffs also state a claim upon which relief can be granted under the APA. The defendants admitted at oral argument on the present motions that, to the extent the plaintiffs seek review of the current High Level Implementation Plan, final agency action exists, assuming that Congress continues to appropriate funds for the plan. *See* Transcript of October 8, 1998, Motions Hearing at 24–25. The Court agrees. Whether Congress chooses in the future to continue to appropriate money to the Department of the Interior to execute the High Level Implementation Plan does not affect its current finality under the APA. Thus, the High Level Implementation Plan constitutes final agency action.

■ In addition, the accounting system that the government has enacted and continues to use in the administration of the IIM trust provides this Court with reviewable final agency action for the purposes of 5 U.S.C. § 704. To satisfy the requirement of finality of agency action under the APA, a court must make two determinations. First,

"the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (citing *Chicago & Southern Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 113, 68 S.Ct. 431, 92 L.Ed. 568 (1948)). Second, "the action must be one by which 'rights or obligations' have been determined," or from which "legal consequences will flow." *Id.* (citing *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970)). The defendants contend that neither of the elements have been met in this case. The Court disagrees:

Although the defendants surely can, and by their own admission should, reform the IIM trust accounting system, the deficiencies of their present system do not defeat its review on the grounds of finality. The system chosen by the defendants is being used in the administration of the plaintiffs' accounts. The fact that the defendants have the power to change the system cannot render the present system they have chosen to be one interlocutory in nature. As the courts of the D.C. Circuit have recognized in the analogous context of review of regulatory rulemaking, "[i]f the possibility of unforseen amendments were sufficient to render an otherwise fit challenge unripe, review could be deferred indefinitely." *Sabella v. United States*, 863 F.Supp. 1, 4 (D.D.C.1994) (quoting *American Petroleum Inst. v. U.S. E.P.A.*, 906 F.2d 729, 739–40 (D.C.Cir.1990)). Moreover, the present case is distinguishable from a situation in which an agency has taken a tentative position. *See Natural Resources Defense Council, Inc. v. EPA*, 22 F.3d 1125, 1132–33 (D.C.Cir.1994). The agency's accounting system has been and continues to be implemented, and the plaintiffs have no choice but to have their accounts administered under it. Thus, the accounting system that has been chosen and used by the defendants to administer the plaintiffs' IIM accounts cannot be said to be tentative or interlocutory in nature, thereby satisfying the first prong of the finality analysis.[10]

As for the second element of the finality analysis, the defendants do not put forward any serious argument to contest the idea that legal consequences flow from their choice of accounting methodology. Under the current legislative scheme, the plaintiffs are legally entitled to the sums of money earned off of various activities on their land, which is held in trust by the government. The amount to which they are entitled is determined by the results produced by the applicable accounting system. If a different, more accurate system were employed, the sums of money to which each individual plaintiff would be entitled would change. Hence, the defendants' choice of accounting methodology has direct, concrete effects on the plaintiffs' rights. Therefore, the second prong of the finality test has been established.

For these reasons, the defendants' argument that this case presents no final agency action to be reviewed fails. The High Level Implementation Plan and the accounting system in place provide this Court with reviewable final agency action.

In summary, the Court finds that it has jurisdiction to hear this matter. The APA waives sovereign immunity for the plaintiffs'

---

**10.** Defendants cite *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) for the proposition that final agency action is lacking. *Lujan*, however, is clearly distinguishable from this case. In *Lujan*, the Supreme Court held that no final agency action existed when the plaintiffs challenged the Bureau of Land Management's "land withdrawal review program." *Id.* at 890, 110 S.Ct. 3177. That so-called program was not an order, regulation, or universe of orders or regulations. Instead, the "program" was simply the name attached to the general activities of the agency, and the plaintiffs sought to challenge generically all aspects of the program.

In this case, the defendants have enacted a concrete accounting system which it currently administers and which the plaintiffs claim, under its APA allegations, constitutes arbitrary and capricious action. The plaintiffs do not seek to generically challenge the defendants' actions. The plaintiffs have named specific actions, specifically the High Level Implementation Plan and the current accounting systems, which have been administered "across the board." *Id.* at 890 n. 2, 110 S.Ct. 3177. These agency actions are final, ripe, and allegedly adversely affect the plaintiffs. For these reasons, *Lujan* does not contemplate a different result.

prospective relief because it is not an action for money damages and not otherwise dedicated to the discretion of the agencies by law. *See* 5 U.S.C. §§ 701(a)(2) & 702. Plaintiffs primarily assert prospective equitable claims based on the law of trusts, not claims under the APA. To the extent that the plaintiffs assert a prospective claim under the APA, final agency action exists in the form of the defendants' High Level Implementation Plan and current accounting system. Therefore, the defendants' motion for judgment on the pleadings on these grounds will be denied.

## B. *Mandamus*
### 1. *Parties' Arguments*

The defendants argue that mandamus is an inappropriate remedy in this case because the defendants' trust duties should not be characterized as ministerial. In a nutshell, the defendants claim that their duties as trustee cannot be ministerial because of the discretionary decisions involved in trust administration. Moreover, the defendants contend that the integral relationship between budgetary limitations and the selection and timing of IIM account reform measures preclude mandamus.

The plaintiffs respond by arguing that the defendants' obligation to institute the minimal standard practices (as requested by the plaintiffs) is not a discretionary function. Instead, they characterize the 1994 Indian Trust Fund Management Reform Act, 25 U.S.C. § 162a(d), as a congressional divestiture of discretion, characterizing the duties enunciated in that act as mandatory, at least at their most basic level. *See supra* note 1.

### 2. *Applicable Law & Analysis*

■■■ Mandamus may properly issue "only where the duty to be performed is ministerial and the obligation to act peremptory, and clearly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and undisputable." *Littlewolf v. Hodel,* 681 F.Supp. 929, 949 (D.D.C.1988) (quoting *13th Regional Corp. v. United States Dept. of Interior,* 654 F.2d 758, 760 (D.C.Cir.1980) (quoting *U.S. ex rel. McLennan v. Wilbur,* 283 U.S. 414, 420,

51 S.Ct. 502, 75 L.Ed. 1148 (1931))), *aff'd,* 877 F.2d 1058 (D.C.Cir.1989). For a duty to be classified as ministerial, it must be "so plainly prescribed as to be free from doubt and equivalent to a positive command." *Wilbur v. U.S. ex rel. Kadrie,* 281 U.S. 206, 218–19, 50 S.Ct. 320, 74 L.Ed. 809 (1930).

■■■ All of the cases brought to the attention of the Court and found upon its independent review show that a writ of mandamus clearly would be an improper remedy with regard to the discharge of the defendants' trust duties. In *Littlewolf,* for example, a group of Indian plaintiffs brought a class action suit, in part, to enforce certain trust duties owed to them under the General Allotment Act of 1887, 24 Stat. 388. The General Allotment Act made the government legal trustee of Indian lands that were to be converted from reservation to individual allotments. Like the claims presented in the case at bar, the plaintiffs alleged that the trustee breached a standard trust duty.[11] The court treated the plaintiffs' claims as a petition for writ of mandamus and granted summary judgment for the defendants. In rejecting the plaintiffs' claims, the court held:

> Neither a specific ministerial duty nor a congressional intent to create such a duty marks this case. Rather, plaintiffs seek to compel defendants to exercise their discretion with respect to their trust duties in a particular manner. Mandamus cannot compel this.

*Littlewolf,* 681 F.Supp. at 949. Just as the government owed the *Littlewolf* plaintiffs a specific trust duty, the government owes similar trust duties in the case at bar. But, as the *Littlewolf* court recognized, the mere existence of a duty does not make it ministerial in nature. Accountings cannot be said to be any more ministerial than heirship determinations.

The Court of Appeals for the Ninth Circuit has reached a similar conclusion. In *Moose v. United States,* 674 F.2d 1277 (9th Cir. 1982), members of the Southern Paiute Indian tribe brought a class action suit to, in part, seek a writ of mandamus to compel the government to recalculate each plaintiff's

---

**11.** In *Littlewolf,* the trust duty at issue was the duty to make heirship determinations.

share of investment accounts held in trust by the government. *See id.* at 1284. The plaintiffs contended that the government had mismanaged their shares of the fund and sought a writ of mandamus to compel the government to carry out its trust duties. In affirming the district court's dismissal of the mandamus counts, the Ninth Circuit held:

> Mandamus ... is proper only where the claim its proponent seeks to enforce is clear and certain and the duty of the government official is ministerial and "so plainly prescribed as to be free from doubt." That is not the situation here. If the government is held to have breached its trust responsibilities, it will be for the district court, in the first instance, to determine the corrected value....

*Id.* at 1284 (quoting *Lee Pharmaceuticals v. Kreps*, 577 F.2d 610, 618 (9th Cir.1978); *Jarrett v. Resor*, 426 F.2d 213, 216 (9th Cir. 1970)).[12] The *Moose* analysis highlights the figurative gap between the existence of a trust duty and a ministerial duty. Discretion fills the interstice between these two points, and mandamus cannot issue as to discretionary, non-ministerial functions.

In sum, the Court agrees with the assessments of the *Littlewolf* and *Moose* courts. Although both parties agree that a trust relationship exists between them and that such a relationship carries certain duties, they disagree on the scope and contours of the duties. Even if these duties have been breached, as the plaintiffs allege, they can hardly be said to be ministerial in nature. Indeed, part of the relief sought by the plaintiffs in this case is "a decree construing the trust obligations of defendants." *Plaintiffs' Complaint* at 26. That such a determination needs to be made supports a finding of the non-ministerial nature of the duties involved. Therefore, because the duties alleged by the plaintiffs in this case cannot be construed as ministerial, they have failed to state a claim upon which relief can be granted. The defendants' motion to dismiss the plaintiffs' claim for mandamus will be granted.

### C. *Permanent Injunction*

The plaintiffs have challenged the issuance of a permanent injunction only on jurisdictional and summary judgment grounds. For the reasons stated above, their motion will be denied in both regards. *See supra* section IV(A)(2) (rejecting the defendants' jurisdictional argument) & subpart III(A) (denying the defendants' motion for summary judgment as premature).[13]

### D. *Failure to State a Claim Upon Which Relief Can be Granted for Interference with the Special Trustee by the Secretary of the Interior*

#### 1. *Parties' Arguments*

The defendants argue that the plaintiffs' Complaint wholly fails to state a claim upon which relief can be granted in regard to the Secretary of the Interior's alleged interference with the Special Trustee's discharge of his duties for two reasons. First, in short, the Complaint only makes conclusory, false statements of fact. Second, the governmental actions alleged in the Complaint were statutorily mandated and are not subject to judicial review under *Lincoln v. Vigil*, 508 U.S. 182, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993). Both of these attacks focus upon the following allegations averred in the Complaint: (1) "[a]t the close of Fiscal Year 1995, [Interior] had $24,000,000 in uncommitted

---

12. The plaintiffs do not address this case law in their brief. Instead, the cryptically refer to *McNulty v. National Mediation Bd.*, 18 F.Supp. 494 (N.D.N.Y.1936), stating that their mandamus claim should be treated as a mandatory injunction. Although *McNulty* certainly stands for the proposition that a mandatory injunction is "like a mandamus in all essential respects," that proposition does not help the plaintiffs. *Id.* at 504.

13. The Court recognizes, however, that two important issues will need to be resolved at the summary judgment stage with regard to the plaintiffs' request for a permanent injunction. First, the Court expects to address the effect of the plaintiffs' APA claims on the availability of a permanent injunction. *See* 3 KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE § 18.4, at 180 (1994) (discussing generally the availability of a permanent injunction when a legal remedy, such as statutory review is available). Second, the Court will need to address the availability of a mandatory injunction in light of the Court's holding today on the issue of mandamus. *See id.* § 18.4, at 180–81 (discussing broadly the parallel analysis between mandatory injunctions and writs of mandamus).

appropriated funds which could have been reprogrammed with the approval of congressional committees and applied to the work of the Special Trustee; rather than apply such funds, they returned them to the Treasury." *Plaintiffs' Complaint* ¶ 31(a); and (2) the defendants "refused to request adequate funds for Fiscal Year 1996 for the work of the Special Trustee mandated by the 1994 Act." *Id.* ¶ 31(b).

### 2. *Applicable Law & Analysis*

The defendants' first argument—that the plaintiffs fail to state a claim because their Complaint alleges only conclusory statements—must fail for two reasons. First, the statements alleged in the Complaint are far from conclusory. The plaintiffs allege specific ways in which they believe the Secretary of the Interior interfered with the Special Trustee's discharge of his duties. *See supra* note 3. The fact that these specific statements of fact may be "bald assertions" or lack "evidentiary support," is irrelevant for the purposes of a motion for judgment on the pleadings analysis. The Court must take these allegations in the Complaint as true at this point. *See Hughes*, 449 U.S. at 10, 101 S.Ct. 173.

The defendants' second argument—that the aforementioned governmental actions are inherently unreviewable and committed to agency discretion as a matter of law under *Vigil*—must also fail at this juncture. In *Vigil*, a group of handicapped Indian children eligible for medical services at a regional health clinic brought suit against the government to prevent the Director of Indian Health Services from canceling the program. The regional program had been funded by a lump-sum appropriation from Congress, and the Director had decided to shift the expenditure to a nationwide program. The Supreme Court held that "as long as the agency allocated funds from a lump-sum appropriation to meet permissible statutory objectives," the allocation was an unreviewable budgetary decision. *Id.* at 193, 113 S.Ct. 2024.

Because the Court is currently presented with a motion for judgment on the pleadings, it is factually restricted to the allegations of the Complaint. While the Complaint provides various specific allegations in order to state a claim, it does not provide the factual intricacies necessary to make a determination under *Vigil.* Without such information, the Court cannot say that the plaintiffs have failed to state a claim upon which relief can be granted. This is not to say, however, that *Vigil* will not preclude review of the allegations that implicate budgetary decisionmaking. For example, if the funds allocated to discharge the trust administration duties were provided in a lump sum by Congress, and the defendants' actions were done to meet permissible statutory objectives, *Vigil* clearly stands for the proposition that an agency's budgetary allocation would be committed to agency discretion by law. *See Vigil,* 508 U.S. at 192, 113 S.Ct. 2024. The problem with the defendants' argument is that it should be asserted in a summary judgment motion once the undisputed facts necessary for the Court to make its determination may be considered. For the purposes of its motion for judgment on the pleadings, however, the defendants' motion must be denied.

### E. *Failure to State a Claim Upon Which Relief Can be Granted Against the Secretary of the Treasury*

#### 1. *Parties' Arguments*

The Complaint alleges that the Secretary of the Treasury "is custodian of the moneys in IIM accounts, is responsible for maintaining certain records in connection therewith, and has certain investment responsibilities with respect thereto." *Plaintiffs' Complaint* ¶ 15. The defendants contend that the plaintiffs' claims against the Secretary of the Treasury must be dismissed for the following reasons: (1) "This allegation inaccurately portrays the extremely limited role of the treasury with respect to moneys contained in the IIM account"; (2) the Secretary owes the plaintiffs no independent statutory duty and therefore this Court does not have jurisdiction; and (3) any duties the Secretary owes are nondiscretionary and have been properly discharged. The plaintiffs do not respond to the defendants' arguments on this point.

#### 2. *Applicable Law & Analysis*

The Court has jurisdiction to consider the plaintiffs' claim against the Secretary

of the Treasury because the claim arises under the statutory law and common law of the United States. *See* 28 U.S.C. § 1331. The defendants admit that the Secretary of the Treasury owes certain—though limited—obligations in discharging the government's trust administration duties. *See* 25 U.S.C. § 161a(b). The plaintiffs aver that these obligations have been breached. *See Plaintiffs' Complaint* ¶ 15. Therefore, the plaintiffs' claims arise under statutory law. Moreover, as several courts have recognized and as the plaintiffs allege, allegations of breach of trust against government officials with regard to the administration of Indian trusts arise under the federal common law. *See County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 233, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985) (explaining that federal question jurisdiction existed in an ejectment action brought by Indian plaintiffs based, in part, on federal common law); *Vizenor v. Babbitt,* 927 F.Supp. 1193, 1199 (D.Minn.1996) (holding that, in a suit against the Secretary and Assistant Secretary of the Interior for breach of trust, the claims arose under federal common law); *White v. Matthews,* 420 F.Supp. 882, 887–88 (D.S.D.1976) (holding that allegations of breach of trust against the government in a suit brought by Indian plaintiffs invoked federal question jurisdiction under federal common law). Actions arising under federal common law fall within the general federal question jurisdiction conferred by 28 U.S.C. § 1331. *Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). The Supreme Court has repeatedly upheld the existence of a trust relationship between the government and the Indian people. *See, e.g., Mitchell II,* 463 U.S. at 225, 103 S.Ct. 2961. The plaintiffs allege that the government, including the Secretary of the Treasury (to a limited extent) has breached these recognized duties. Therefore, because the plaintiffs' allegations against the Secretary of the Treasury arise under the statutory law and common law of the United States, this Court has "arising under" jurisdiction over the plaintiffs' claim.

The defendants' first and third arguments have already been addressed, in slightly different contexts. Both arguments must be rejected in the context of a motion to dismiss.

The defendants' first argument—that the plaintiffs' Complaint in fact inaccurately portrays the Secretary of the Treasury's role in trust administration—must be rejected because, for the purposes of a motion for judgment on the pleadings, the Court assumes the allegations in the Complaint to be true. *See Hughes,* 449 U.S. at 10, 101 S.Ct. 173. The defendants' third argument—that mandamus would be improper with regard to the Secretary of the Treasury because his duties are nondiscretionary—must also be rejected. The plaintiffs allege that the Secretary of the Treasury owes them certain duties and that these duties have been breached. The defendants admit that the Secretary of the Treasury owes certain duties, but contend that the Secretary has no discretion in carrying out these duties. Nondiscretionary duties, however, are exactly the type for which mandamus must be sought. *See McLennan,* 283 U.S. at 420, 51 S.Ct. 502. The defendants can assert at the summary judgment stage that no genuine issue of material facts exists as to whether the Secretary of the Treasury breached any of those duties, but for the purposes of a motion for judgment on the pleadings, their nondiscretionary nature does not preclude the plaintiffs from seeking mandamus relief. Therefore, the defendants' motion to dismiss the plaintiffs' mandamus claims against the Secretary of the Treasury must be denied.

## V. *Defendants' Consolidated Motion to Dismiss the Plaintiffs' Claim for Retrospective Relief*

The plaintiffs' request that this Court grant them retrospective relief in the form of an accounting. The defendants move for judgment on the pleadings for three reasons: (1) sovereign immunity; (2) statute of limitations; and (3) laches. The defendants' motion will be denied.

### A. *Sovereign Immunity*

#### 1. *Parties' Arguments*

Defendants contend that the United States has not consented to be sued in this court on the plaintiffs' retrospective claim because it is one for money damages greater than $10,-

000.[14] In the defendants' view, the plaintiffs have simply tried to characterize their claim as one for equitable relief when they truly want money damages. The plaintiffs allege that their requested relief is equitable and that the APA therefore waives the defendants' sovereign immunity defense.

### 2. *Applicable Law & Analysis*

■ In determining whether the United States has consented to be sued in a federal district court in this case, the crucial issue becomes whether the plaintiffs' requested retrospective remedy of an accounting is an equitable, specific claim, or whether it is simply a money damages claim in disguise. Given the allegations contained in the Complaint and, importantly, certain representations of the plaintiffs' counsel, the Court holds that the retrospective allegations of the Complaint seek solely an accounting. Thus, the plaintiffs do not seek money damages.

To bring a claim against officers of the United States in a district court, the plaintiff must show that the court has subject matter jurisdiction and that the United States has waived its sovereign immunity. *See Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 607 (D.C.Cir. 1992). As previously discussed, the plaintiffs have met their burden of showing subject matter jurisdiction in this suit because their action arises under the law of the United States—both statutory and common. To prove a waiver of sovereign immunity under § 702 of the APA, however, the plaintiffs' claim must be one seeking relief "other than money damages." 5 U.S.C. § 702. Because the plaintiffs have only alleged a waiver of sovereign immunity under the APA, their action must be dismissed if they cannot meet their burden of showing that their case falls within that section's parameters.[15]

In short, the parties disagree on exactly what relief the plaintiffs seek. It appears that the dispute boils down to two critical points. First, the plaintiffs undoubtedly ask for an accounting. The plaintiffs allege this in their Complaint, *see Plaintiffs' Complaint* at 26, and this allegation surely can not be contested by the defendants. The second issue—and the true point of impasse—is whether the plaintiffs seek anything beyond an accounting.

The plaintiffs asserted at oral argument on this motion that all of the money that should be held collectively in their IIM accounts is already there; the plaintiffs simply contend the individual account balances are misstated. By way of analogy, the plaintiffs liken the status of the accounts to the loss of a checkbook. That is, the money is in the account but the ledger cannot be properly kept, so the stated balance is incorrect. In the plaintiffs' view, they only seek to balance the checkbook, not add any money to the checking account.

Defendants, on the other hand, contend that "[i]t appears ... that Plaintiffs do not simply desire to have their accounts restated; they desire a cash infusion for any shortfalls disclosed through the statistical analysis." *Defendants' Consolidated Motion to Dismiss Plaintiffs' Claim for Retrospective Relief* at 3. The defendants argue that the language of the Complaint supports their position. To be specific, the defendants concerns arise from the plaintiffs' statements that they seek to be "made whole" and that this lawsuit is one for "breach of trust." *Plaintiffs' Complaint* at 2, 27.

The defendants concerns, although understandable, are unwarranted. The plaintiffs have repeatedly and expressly stated that their Complaint does not seek an additional infusion of money or other damages for other

---

14. Defendants assert that if this suit is found to be one seeking monetary damages, the Court of Federal Claims would have proper jurisdiction under 28 U.S.C. § 1491. The defendants also admit that this court would have jurisdiction of a claim for money damages under the Little Tucker Act if the plaintiffs limited their claims to $10,-000. *See* 28 U.S.C. § 1346(a)(2).

15. Although the plaintiffs mention 28 U.S.C. § 1331 and 28 U.S.C. § 1361 in their Complaint, these statutes do not constitute waivers of sovereign immunity. *See Swan v. Clinton*, 100 F.3d 973, 981 (D.C.Cir.1996) (holding that 28 U.S.C. § 1331 does not constitute a waiver of sovereign immunity); *Public Citizen v. Kantor*, 864 F.Supp. 208, 213–14 (D.D.C.1994) (holding that 28 U.S.C. § 1361 does not waive the federal government's sovereign immunity).

losses, but rather requests only an accounting. *See* Transcript of October 5, 1998, Motions Hearing at 39 ("[The government] also like[s] the phrase that we're seeking an infusion of money. That's just not what we're seeking. We're not seeking any new or additional money. The money is there. The amount is misstated. We seek to adjust the statement of the amount.") The Court will construe the Complaint in that light. This is a reasonable construction of certain ambiguous phrases contained in the Complaint upon which the defendants focus, such as "breach of trust" and "made whole." Although the Complaint contains other references that could presumably lead to compensatory relief,[16] the plaintiffs have plainly stated that they only seek an accounting, not a cash infusion. Thus, the defendants' argument supporting their motion to dismiss on this point is moot.[17] Because the plaintiffs do not ask this Court to order the government to make cash infusions into the IIM accounts to recompense the plaintiffs for lost or mismanaged funds, but instead ask this Court solely for a declaration of the defendants' trust duties and an accounting of money already existing in the account, the Court will deem the plaintiffs' Complaint to state such a claim in that regard only. Given the representations made by the plaintiffs, the Court deems any other language in the Complaint that could be construed to the contrary to be information unnecessary to sustain the plain-

tiffs' claim for an accounting.[18] The Court is not presented with a request to order money damages to the plaintiffs or to add to the collective balance of the accounts, so the Court cannot possibly grant such relief.

Although the bulk of the defendants' jurisdictional challenge relies on the foregoing rejected argument, the Court must still consider the defendants' contention that the plaintiffs' action for an accounting does not fall within the waiver of sovereign immunity. As stated above, this determination turns on whether the plaintiffs' retrospective accounting action is the equivalent of one for money damages.

Case law has "long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for . . . 'the recovery of specific . . . monies.'" *Id.* at 893, 108 S.Ct. 2722 (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)). The distinction between the two, however, has been elusive. As the Supreme Court recognized in *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), the D.C. Circuit Court of Appeals' application of the distinction between money damages and specific relief to § 702 of the APA "merits quotation in full." *Id.* at 894, 108 S.Ct.

---

**16.** For example, the Complaint states that "[b]y this action [the plaintiffs] . . . seek . . . [an order] to direct [the defendants] to restore trust funds wrongfully lost, dissipated, or converted." *Plaintiffs' Complaint* ¶ 4.

**17.** Because the plaintiffs admit that they do not ask this court to order cash infusions into the account for lost or mismanaged funds, this case does not present an "artful pleading" problem. An artful pleading problem exists in the context of making a determination on whether the plaintiffs truly seek money damages or specific relief when the plaintiffs ask for cash infusions but allege their action in terms of equitable relief. In the present case, the defendants claim that a cash infusion is really the gravamen of the plaintiffs' Complaint. The defendants' fear, however, is belied by the plaintiffs' express concession that they do not ask this Court to take such an action.

**18.** For the sake of clarity, and because the Complaint does contain statements that are clearly irrelevant to the relief the plaintiffs proclaim to

seek, the following references are stricken from the Complaint: (1) "[T]he true totals would be far greater than those amounts, but for the breaches of trust herein complained of." *Plaintiffs' Complaint* ¶ 2; (2) "[Defendants] have lost, dissipated, or converted to the United States' own use the money of the trust beneficiaries." *Id.* ¶ 3(d); (3) "and to direct [the defendants] to restore trust funds wrongfully lost, dissipated, or converted." *Id.* ¶ 4; (4) "Failure to exercise prudence and observe the requirements of law with respect to investment and deposit of IIM funds, and to maximize the return on investments within the constraints of law and prudence." *Id.* 21(g). The elimination of these references conforms the Complaint to the plaintiffs' theory of their case and eliminates the basis for the government's concerns that the plaintiffs are asking this Court to order a cash infusion into the accounts.

2722. In *Maryland Dep't of Human Resources v. Department of Health & Human Services*, 763 F.2d 1441 (1985), Judge Bork stated:

> We begin with the ordinary meaning of the words Congress employed. The term 'money damages,' 5 U.S.C. § 702, we think, normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to substitute for a suffered loss, where as specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.' DAN B. DOBBS, HANDBOOK ON THE LAW OF REMEDIES 135 (1973). Thus, while in many instances an award of money is an award of damages, '[o]ccasionally a money award is also a specie remedy.' *Id.* Courts frequently describe equitable actions for monetary relief under a contract in exactly those terms....
>
> In the present case, Maryland is seeking funds to which a statute allegedly entitles it, rather than money in compensation for the losses, whatever they may be, that Maryland will suffer or has suffered by virtue of the withholding of those funds. If the program in this case involved in-kind benefits this would be altogether evident. The fact that in the present case it is money rather than in-kind benefits that pass from the federal government to the states (and then, in the form of services, to program beneficiaries) cannot transform the nature of the relief sought—specific relief, not relief in the form of damages.

*Id.* at 1446.

The principles of the distinction between money damages and specific relief, as enunciated in *Bowen*, show that the plaintiffs' claim for an accounting is indeed one for specific relief. The plaintiffs do not ask this Court to compel the defendants to pay money to substitute for losses resulting from the mismanagement of the IIM accounts. Nor do they ask the Court to order a cash infusion into the IIM trust system. Instead, the plaintiffs ask only for a declaration that the defendants have breached their trust duties and a decree ordering the defendants to properly account for the money that already sits in the trust fund to which the plaintiffs are beneficiaries. These facts belie any claim that the plaintiffs' requested remedy is for money damages.

Instead, the plaintiffs seek an accounting of money already owed to them and held in trust by the defendants. They claim this right under the statutory provisions of 29 U.S.C. § 162a and trust law. Hence, the plaintiffs ask the Court to grant them the very thing to which they are allegedly entitled—an accounting of money existing in the IIM trust fund. *See Maryland Dept. of Human Resources*, 763 F.2d at 1446. This request must be classified as specific because it is in no way compensatory or substitutionary in nature. Therefore, the plaintiffs do not assert a claim for money damages. Claims "other than for money damages" may proceed against the government under 5 U.S.C. § 702, the government's waiver of sovereign immunity in such actions.

The line of case law stating that the remedy of accounting is an equitable one further supports the conclusion that the plaintiffs' requested relief is one for specific relief, as opposed to one for money damages. *See e.g., Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) (noting that a suit for an accounting is equitable in nature but holding that the plaintiff's case was actually one for a money judgment under a breach of contract theory); *American Universal Ins. Co. v. Pugh*, 821 F.2d 1352, 1356 (9th Cir.1987) "[A]n accounting is an equitable remedy." (citing *In re Energy Resources Co.*, 49 B.R. 278, 282 (Bankr.D.Mass. 1985)); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir.1985) ("Because an accounting is an equitable remedy, a court has broad discretion to determine whether it is appropriate to order an accounting."); *Medtronic, Inc. v. Intermedics, Inc.*, 725 F.2d 440, 443 (stating that "[a]ccountings were deemed inherently equitable in cases between partners and others in particular relationships"). The question of whether an accounting is equitable or legal in nature can be a complicated one. *See Medtronic, Inc.*, 725 F.2d at 443 ("Although accounting is conventionally described as an equitable remedy ... the historical (and contemporary) picture is more complicated."). But most of the more diffi-

cult cases, like cases involving "artful pleading," involve claims for an "accounting" that really ask for a money judgment under some other legal theory that already provides a legal remedy. In the case at bar, however, the plaintiffs seek an accounting under the basic fiduciary relationship governed by the law of trusts. This type of accounting is a standard equitable remedy within the law of trusts, in which the beneficiaries seek to compel the trustee account for his stewardship of the trust res. *See* G. BOGERT, THE LAW OF TRUSTS AND TRUSTEES §§ 963–68 (rev.2d ed.1983). Therefore, for the reasons stated above, the substance of the plaintiffs' request for an accounting must be construed as an equitable action, not one for money damages. For this reason, the plaintiffs' retrospective claim falls under the government's waiver of sovereign immunity in 5 U.S.C. § 702.

### B. *Statute of Limitations*

#### 1. *Parties' Arguments*

The defendants contend that the applicable statute of limitations precludes judicial review and federal liability with respect to any IIM account transaction that occurred prior to October 1, 1984. The defendants arrive at this date by working backward from the date of the commencement of this suit, June 9, 1996. First, the defendants note that the statute applicable to the case at bar, 28 U.S.C. § 2401(a) (1995), provides for a six-year statute of limitations. Normally, the application of this statute would lead to a cut-off date of June 9, 1990. However, on November 5, 1990, Congress passed the Department of the Interior and Related Agencies Appropriates Bill, Pub.L. No. 101–512, 104 Stat.1915. That act, which became effective on October 1, 1990, included the following provision:

> [N]otwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds, until the affected tribe or individual Indian has been furnished with the accounting of such funds.

*Id.* In the defendants' view, the six-year statute of limitations applies from the effective date of this act, October 1, 1990. Hence, the defendants arrive at their cut-off date of October 1, 1984. Although the defendants do not point to any specific date on which the plaintiffs had notice of the accrual of their claims, the defendants name several Congressional reports dating back before 1984 to support their proposition that the plaintiffs were put on inquiry notice of trust management problems with regard to their IIM accounts before the cut-off date.

The plaintiffs rely on the same statutory authority as the defendants, but contend that plain language of Pub.L. No. 101–512 flatly prohibits the government from raising the defense of limitations in this action. The plaintiffs point to legislative history and the Federal Court of Claims' interlocutory, unpublished decision in *Assiniboine & Sioux Tribes of the Fort Peck Reservation v. United States,* No. 773–87L (Fed.Cl.1995), as support for their interpretation of the act.

*Assiniboine* was a breach of trust suit brought by an Indian tribe against the government for its mismanagement of trust funds. The plaintiffs brought claims seeking money damages, including compensatory damages for interest earned in the course of the government's administration of the trust property, money not received pursuant to the applicable "standing appropriations order" (to use the plaintiffs' terminology), and money that "was or should have been in the trust accounts on December 23, 1981, as a result of transfers to the accounts and related interest, during the period August 13, 1946, through 1981." *Id.* at 6. To determine the accuracy of the trust accounts as of December 23, 1981, the plaintiffs requested an accounting. The government argued that the six-year statute of limitations provided under 28 U.S.C. § 2501 precluded the recovery of funds before December 23, 1981, and that the statute also precluded an accounting before that time. The court resolved the limitations issue on two grounds. First, it held that "[a]n accounting ... is the only mechanism to determine the accuracy of the trust accounts at December 23, 1981." *Id.*[19] Second,

---

**19.** Although the court did not further explain its holding on this point, it apparently reasoned that

and relevant to this case, the court held that "the limitations issue is resolved by statute," pointing to the 1994 appropriations act.[20] *Id.* The Court of Federal Claims went on to state that the tolling provision "established when plaintiffs 'should have known' of the breach of trust duties—after an accounting has been furnished." *Id.*

Although the entire text of the plaintiffs' limitations argument relies on the tolling provision of the appropriations act, the plaintiffs do assert two other responses in two short footnotes. First, the plaintiff's argue that they had no notice of the defendants' breaches of trust and had no reason to know of these breaches until the defendants publicly acknowledged before Congress their failure to properly manage Indian trust funds, then unilaterally defied the mandate of Congress to audit and reconcile the IIM trust. Second, the plaintiffs contend that the statute of limitations should be equitably tolled because the defendants have deliberately concealed the facts on which this action is based.

### 2. *Applicable Law & Analysis*

Before turning to the applicable law in this case, it is useful to clarify the disputed issues. Both parties agree that 28 U.S.C. § 2401 and Pub.L. No. 101–512 govern in this case.[21] The defendants concede that limitations will not bar any transactions in the IIM accounts that occurred on or after October 1, 1984. It is the transactions before this date that are at issue. On these transactions, the parties disagree in two

ways. First, the parties disagree on whether the tolling language contained in the appropriations act completely eliminates any limitations defense in this action. Second, assuming limitations is a viable defense, the parties disagree on the exact time at which the plaintiffs' cause of action accrued, which triggers the statute of limitations. On this point, however, the parties agree that the plaintiffs' cause of action accrued when the plaintiffs knew or should have known of their right of action against the government.

 The plaintiffs' interpretation of the tolling language contained in Pub.L. No. 101–512 must be rejected. The tolling provision at issue states "[t]hat notwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds." Pub.L. No. 101–512. Under the plaintiffs' interpretation of that language, the limitations defense has been completely eliminated as to their claim for an accounting—which would necessarily include transactions dating back several decades—without regard to when these claims accrued.

Although the Court agrees that the plaintiffs fall under the protections of the tolling statute because their claim is one for "trust mismanagement," these protections do not include the revival of potentially long stale claims.[22] The tolling language clearly stops

the plaintiffs' claim for relief was one for money damages as of December 23, 1981, and the accounting was merely incidental to that relief. As such, the statute of limitations could not limit the mechanism used to arrive at the proper amount of money damages, but instead could only limit the damages themselves. Hence, the accounting did not fall subject to the statute of limitations.

This holding, however, does not apply to the facts of the case at bar because the plaintiffs do not seek an accounting as a remedy incident to a money damages claim. Instead, the accounting is the remedy sought.

**20.** The tolling provision involved in *Assiniboine* mirrors the language from the 1990 appropriations act at issue in this case. This provision has been included in every other Department of the Interior and Related Agencies Appropriations Act since 1990. *See* Act of November 5, 1990, Pub.L. No. 101–512, 104 Stat.1915; Act of November

13, 1991, Pub.L. No. 102–154, 105 Stat. 990; Act of October 5, 1992, Pub.L. No. 102–381, 106 Stat. 1374; Act of November 11, 1993, Pub.L. No. 103–138, 107 Stat. 1379; Act of September 30, 1994, Pub.L. No. 103–332, 108 Stat. 2499; Act of April 26, 1995, Pub.L. No. 104–134, 110 Stat. 1321; Act of September 30, 1996, Pub.L. No. 104–208, 110 Stat. 3009.

**21.** The six-year statute of limitations on actions brought against the United States is a jurisdictional condition that applies to the government's waiver of sovereign immunity. *See Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 55 (D.C.Cir. 1987). The courts of this circuit have held that as a condition of sovereign immunity waiver, the statute must be strictly construed. *See id.*

**22.** The determination of whether any of the plaintiffs' claims are actually stale depends upon when they accrued, which is discussed below.

the clock from commencing[23] to run on the plaintiffs' viable claims as of October 1, 1990. But nothing in this legislative history shows that the "tolling provision" was ever intended to do more than its name suggests. In other words, the provision only tolls a clock that has not commenced running. It cannot revive claims for which the clock stopped running long ago.

The plain language and the legislative history of the tolling provision support such an interpretation. Although scant, the legislative history shows that the provision was meant to "protect the rights of tribes and individuals until reconciliation and audit of their accounts has been completed." H.R.Rep. No. 103–158, 103rd Cong., 1st Sess. 57 (1993). Nothing in this statement of legislative intent supports an argument that the "rights" being protected include stale causes of action. Absent some clear, contrary expression of congressional intent that would lead to the conclusion that Congress meant to revive stale claims, the plaintiffs' interpretation of the tolling language contained in Pub.L. No. 101–512 must be rejected. *See Resolution Trust Corp. v. Seale*, 13 F.3d 850, 853 (5th Cir.1994) (holding that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 (1989), does not revive stale claims because "[s]ubsequent extensions of a limitations period will not revive barred claims in the absence of a clear expression of contrary legislative intent." (citation omitted)); *Urland v. Merrell–Dow Pharmaceuticals, Inc.*, 822 F.2d 1268, 1276 (3d Cir.1987) ("Thus, it has consistently been held that the … tolling statute does not act to revive claims that had already been barred by the applicable statute of limitations prior to the effective date of the [tolling statute]."); *cf. Fullerton–Krueger Lumber Co. v. Northern Pac. Ry.*, 266 U.S. 435, 437, 45 S.Ct. 143, 69 L.Ed. 367 (1925) ("It is a rule of construction, that all statutes are to be considered prospective, unless the language is express to the contrary, or there is a necessary implication to that effect." (citations omitted)); *Davis v. Valley Distributing Co.*, 522 F.2d 827, 829 (9th Cir.1975) ("It is the general rule that subsequent extensions of a statutory limitation period will not revive a claim previously barred … But the question is one of legislative intent." (citations omitted)). Neither the plain language nor the legislative history of the tolling provision can support the plaintiffs' sweeping interpretation.[24] Therefore, if the plaintiffs can be allowed to bring their cause of action for an accounting based on the transactions that occurred before October 1, 1984, they must show that these claims did not accrue prior to this date. Any claims that accrued before October 1, 1984, would have been time barred before the enactment of the tolling provision in the 1990 appropriations act.[25]

■■■■■ The parties agree that the plaintiffs' claims accrued when the plaintiffs knew or should have known that they had a valid right of action for trust mismanagement against the government. The parties disagree on when that occurred. The question of when the plaintiffs knew or should have known of their claim is a question of fact. *Goldman v. Bequai*, 19 F.3d 666, 672 (D.C.Cir.1994); *Jones v. Rogers Memorial Hosp.*, 442 F.2d 773, 775 n. 2 (D.C.Cir.1971) (per curiam). Given the factual nature of the inquiry, the Court declines to rule on the limitations issue at this juncture for three

---

**23.** The tolling provision in the 1990 appropriations act, on which the parties focus, does not even provide for the tolling of pending claims as of October 1, 1990. In 1993, Congress added a clause to cover pending cases, stating that the tolling provision applied to "any claim in litigation pending on the date of this Act." Department of the Interior and Related Agencies Appropriations Act, Pub.L. No. 103–138, 107 Stat. 1379, 1391 (1993); *see also* H.R.Rep. No. 103–158, 103rd Cong., 1st Sess. 57 (1993) (stating that the language was added to clarify that pending cases are included under this provision).

**24.** To the extent that the interlocutory opinion in *Assiniboine* stands for the proposition that the tolling provision was intended to retroactively revive stale claims—a proposition not explicitly made in the opinion, the Court respectfully disagrees.

**25.** The court declines to address absence of "pending claim" language in the 1990 tolling provision. The defendants implicitly concede that the provision tolls claim for which the clock has already commenced, and the Court is not inclined to make arguments for the defendants beyond this concession.

reasons. First, the case law in this Circuit shows a strong disfavor of making determinations on limitations issues at the motion to dismiss stage. *See Firestone v. Firestone,* 76 F.3d 1205, 1210 (D.C.Cir.1996) (holding that the district court erred by dismissing a case with prejudice on a motion to dismiss rather than summary judgment); *Richards v. Mileski,* 662 F.2d 65, 73 (D.C.Cir.1981) ("There is an inherent problem in using a motion to dismiss for purposes of raising a statute of limitations defense. Although it is true that a complaint sometimes discloses such defects on its face, it is more likely that the plaintiff can raise factual setoffs to such an affirmative defense."); *Jones,* 442 F.2d at 775 n. 2 ("The issue of when plaintiff's decedent discovered the injury, or through the exercise of reasonable diligence should have known of the facts giving rise to the claim, is properly one for the trier of fact, save for the exceptional case when it can be established that there is no material issue of fact."). Second, even though the Court may properly judge a motion to dismiss for lack of jurisdiction that raises the limitations defense at this juncture under a summary judgment standard, *see In re Swine Flu Immunization Prods. Liability Litigation,* 880 F.2d 1439, 1441–43 (D.C.Cir. 1989), to do so would be premature at this point for the same reasons that summary judgment itself is premature. Namely, discovery has not been completed and to decide whether genuine issues of material fact exist at this point would be imprudent. Third, up until this point the parties have focused primarily on the issue of whether the tolling provision of Pub.L. No. 101–512 precludes a limitations defense altogether. Although the plaintiffs raises (in footnotes) the inquiry notice and equitable tolling issues in passing, neither party has fully briefed these points. Such cursory treatment gives the Court little guidance on an important jurisdictional issue. For these three reasons, the defendants' mo-

tion to dismiss the plaintiffs' claims based on transactions that accrued before October 1, 1984 will be denied. The defendants remain free to raise their statute of limitations defense at the summary judgment stage, once the parties have completed their discovery of facts that go to the plaintiffs' knowledge and have had the opportunity to adequately brief the issues presented.[26]

### C. Laches

■ The defendants move to dismiss the plaintiffs' Complaint based upon the defense of laches. The defendants bear the burden of proving this defense. *See Azalea Fleet, Inc. v. Dreyfus Supply & Mach. Corp.,* 782 F.2d 1455, 1459 (8th Cir.1986). The Court must accept the factual allegations of the Complaint as true on a motion to dismiss for failure to state a claim upon which relief can be granted. *See Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. In general, the time period for a laches analysis cannot begin to run until a repudiation of the trust has occurred and the plaintiffs have actual notice of it. *See* G. BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 964, at 73 (rev.2d ed.1983). The Complaint alleges neither. Therefore, the defendants' motion to dismiss based on the laches defense will be denied. Again, the defendants can raise this argument again if they so choose at the summary judgment stage based upon the uncontested facts. At this time, however, the Court cannot accept the defendants' factual allegations.

### VI. Defendants' Motion to Adopt Defendants' Sampling Approach

■ The defendants renew their request that the Court order the parties to select jointly one sample of accounts on which to base a statistical sampling approach to facilitate a full accounting in this matter. The

---

**26.** Presumably the Court will address issues such as when the plaintiffs' claims accrued, the effect of the statute of limitations on an action for an accounting, the undisputed facts on which the defendants base their argument that the plaintiffs' cause of action for an accounting has accrued, and equitable tolling. Specifically, the Court expects to address the issue of the effect of the trust relationship on the accrual of the plaintiffs' claims under 28 U.S.C. § 2401(a). *See*

*Loudner v. United States,* 108 F.3d 896, 901 (8th Cir.1997) (holding that the Indian plaintiffs, as beneficiaries of the trust, were under a lessened duty to discover their claims against the United States as trustee for statute of limitations purposes under 28 U.S.C. § 2401(a) because of the fiduciary relationship (citing *Manchester Bank of Pomo Indians, Inc. v. United States,* 363 F.Supp. 1238 (N.D.Cal.1973))).

defendants further ask the Court to order the plaintiffs to submit to the specific statistical sampling approach proposed by the defendants. Such an order, in the defendants' view, would be a proper exercise of this Court's authority under Fed.R.Civ.P. 23(d), which states:

'In the conduct of actions to which this rule applies, the court may make appropriate orders: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; ... [and] (5) dealing with similar procedural matters.'

Fed.R.Civ.P. 23(d). The defendants cite to the line of case law developed under this rule in which courts have made procedural orders and rulings for the purpose of expediting the presentation of evidence and discovery. *See, e.g., Walsh v. Ford Motor Co.,* 106 F.R.D. 378 (D.D.C.1985) (citing *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975)), *vacated,* 807 F.2d 1000 (D.C.Cir.1986). The plaintiffs contend that such an order is not authorized by Fed.R.Civ.P. 23(d) and that forcing the parties to use any given statistical sampling approach would be tantamount to telling the parties how they must prove their case. In this regard, the plaintiffs assert that such an order would be contrary to the basic tenets of an adversarial system of justice.

The Court notes that the parties, at least at one point in this litigation, apparently agreed that a joint statistical sampling approach would be advantageous. Specifically, such an agreement would alleviate problems caused by incomplete, lost, or destroyed documentation on the IIM accounts. Further, at least in the defendants' view, some sampling methodology may be the only way for the plaintiffs to reach their goal of a full and accurate accounting.

Despite these apparent advantages, the defendants' motion will be denied. Although there would be substantial benefits to the parties' agreeing on a given method or set of accounts on which to base a sampling, such an agreement should certainly not be ordered over the objection of all of the plaintiffs. Although the Court arguably may have discretion to grant the defendants' request, the Court believes that such an order would be inappropriate on the facts of this case. A court-ordered statistical sampling approach would cross the line of providing efficiency and impinge upon the plaintiffs' right to try to prove their case under their own approach. The cases cited by the defendants are not to the contrary.[27] To the extent that the defendants believe the plaintiffs are seeking discovery that is not permitted by the Federal Rules of Civil Procedure, they can assert (and have asserted) proper motions in that regard. The Court has substantial discretion under Rule 23(d) to shape the course of discovery in class actions. If the defendants believe that the plaintiffs cannot prove their case in the absence of an agreed statistical sampling methodology, then the defendants can assert that position in a summary judgment motion or at a trial on the merits. For these reasons, Defendants' Motion to Adopt Defendants' Sampling Approach will be denied.

### VII. *Plaintiffs' Motion to Strike Extraneous Materials*

The plaintiffs have moved to strike six categories of material filed by the defendants: (1) Defendants' Statement of Material Facts; (2) 29 exhibits attached to the defendants' material-facts statement; (3) the defendants' Summary of Facts set forth in their motion for judgment on the pleadings with regard to prospective relief; (4) Defendants' High Level Implementation Plan; (5) any other references to the documents on which the defendants' rely in their motions for judgment on the pleadings with regard to the plaintiffs' prospective or retrospective claims; (6) Defendants' Statement Pursuant to this Court's May 5, 1998 Order.

Plaintiffs claim that the materials listed in (1) through (5) must be stricken because they

---

27. In *Walsh,* the court discussed its discretionary powers under Fed.R.Civ.P. 23(d) in the context of limiting the scope of discovery. In *Blackie,* the court mentioned its discretionary powers under Rule 23(d) in the context of shaping the procedures of the case to fit the proper legal requirements of causation in a securities fraud cause of action. In none of the cases cited did the court order the parties to prove their cases under any given methodology.

are extraneous to motions under FED. R.CIV.P. 12, and because their consideration by the Court would require conversion to summary judgment. Because summary judgment would be premature, the plaintiffs argue that these materials should be stricken. The defendants respond that materials outside the pleadings may be considered for the purposes of a motion under Rule 12(b)(1) and that summary judgment is appropriate anyway.

The plaintiffs' motion to strike the materials listed in (1) through (5) will be denied. Except for the purposes of reviewing the defendants' jurisdictional challenges under FED.R.CIV.P. 12(b)(1),[28] the submitted materials complained of need not be considered for the purposes of a motion for judgment on the pleadings. *See Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C.Cir. 1992). Because the Court has denied defendants' motion for summary judgment *in toto* as premature, the plaintiffs' motion to strike is moot in all other respects.

On May 5, 1998, this Court issued an order instructing the defendants to "serve and file a statement of the specific respects, *if any*, in which they concede that the present management of the trust here involved is inadequate." Order of May 5, 1998 (emphasis added). The defendants timely filed their statement pursuant to this order and, by way of specific references to its Statement of Material Facts, detailed "the areas of the system which need to be upgraded." *Defendants' Statement Pursuant to May 5, 1998 Order* at 1. The defendants went on to state that they "hold the view that the present management of the trust, taking into account the changes that are in process, is adequate." *Id.* at 2. In the plaintiffs' view, the defendants' statement is not responsive because it relies upon future rather than present management concessions and references exhibits that are otherwise impermissible for consideration by the Court at this juncture.[29]

The plaintiffs' motion to strike Defendants' Statement Pursuant to this Court's May 5, 1998 Order will be denied. The defendants clearly concede that some improvements need to be made and they incorporate them into their statement by reference to their Statement of Material Facts. The defendants have taken the position that their present management of the trust is adequate because of ongoing reform. Although this position, to some extent, relies on future management, it is also directly responsive on the matter of present management. To the extent that the defendants do not concede present inadequacies, they are still, of course, in compliance with the Court's order. The Court explicitly stated that the defendants were only ordered to concede inadequacies, "if any." The defendants' reference to outside documents in its response to the Court's order is not improper, either. Although the Court might be limited to the face of the Complaint with regard to certain Rule 12 motions, no such requirement exists for the Court's May 5, 1998 Order. The plaintiffs do not attempt to point to such authority. Therefore, the plaintiffs' motion to strike Defendants' Statement Pursuant to May 5, 1998 Order will be denied.

## VIII. *Conclusion*

For the reasons given above, the Court will (1)DENY Defendants' Consolidated Motion for Judgment on the Pleadings, and in the Alternative, Motion to Dismiss or Motion for Summary Judgment on Plaintiffs' Demand for Prospective Relief except that the plaintiffs' claims for a writ of mandamus against defendants Babbitt and Gover will be dismissed without prejudice; (2) DENY Defendants' Consolidated Motion to Dismiss Plaintiffs' Claim for Retrospective Relief; (3) DENY Defendants' Motion to Adopt Defendants' Sampling Approach; and (4) DENY Plaintiffs' Motion to Strike Extraneous Materials.

---

**28.** To the extent that this Court must determine whether it has jurisdiction over the plaintiffs' claims, the Court has considered extra-pleading material. *Haase v. Sessions*, 835 F.2d 902, 905–06 (D.C.Cir.1987).

**29.** Namely, the documents that the plaintiffs have moved to strike listed in (1) through (5).

48

A separate order shall issue this date.

SO ORDERED.

## ORDER

For the reasons given in the Court's accompanying memorandum opinion issued this date, it is hereby ORDERED that:

1. Defendants' Consolidated Motion for Judgment on the Pleadings, and in the Alternative, Motion to Dismiss or Motion for Summary Judgment on Plaintiffs' Demand for Prospective Relief is DENIED except as to the plaintiffs' claims for a writ of mandamus against defendants Bruce Babbitt, Secretary of the Interior, and Kevin Gover, Assistant Secretary of the Interior, which are hereby DISMISSED without prejudice.

2. Defendants' Consolidated Motion to Dismiss Plaintiffs' Claim for Retrospective Relief is DENIED.

3. Defendants' Motion to Adopt Defendants' Sampling Approach is DENIED.

4. Plaintiffs' Motion to Strike Extraneous Materials is DENIED.

5. The following language is hereby stricken from the Complaint as irrelevant to the plaintiffs' claims for relief:

(1) "[T]he true totals would be far greater than those amounts, but for the breaches of trust herein complained of." *Plaintiffs' Complaint* ¶ 2;

(2) "[Defendants] have lost, dissipated, or converted to the United States' own use the money of the trust beneficiaries." *Id.* ¶ 3(d);

(3) "and to direct [the defendants] to restore trust funds wrongfully lost, dissipated, or converted." *Id.* ¶ 4;

(4) "Failure to exercise prudence and observe the requirements of law with respect to investment and deposit of IIM funds, and to maximize the return on investments within the constraints of law and prudence." *Id.* 21(g).

SO ORDERED.