The SHOSHONE INDIAN TRIBE OF THE WIND RIVER RESERVATION, WYOMING, Plaintiff,

v.

The UNITED STATES, Defendant.

The Arapaho Indian Tribe Of The Wind River Reservation, Wyoming, Plaintiff,

v.

The United States, Defendant.

Nos. 79–458a L, 79–459a L.[1]

United States Court of Federal Claims.

Nov. 30, 2001.

---

1. There are presently two separate dockets for these consolidated cases. Sand and gravel claims are docketed as 79–458a L & 79–459a L (referred to as the subdocket). All other claims are docketed as 79–458 L & 79–459 L (referred to as the main docket). The pending motion was filed in both dockets. The court is entering an order in the main docket providing that proceedings in the main docket shall also be subject to this order.

John C. Schumacher, Fort Washakie, WY, for plaintiff, The Shoshone Tribe of the Wind River Reservation, Wyoming a/k/a Eastern Shoshone Tribe. Dennis Eamick, Fort Washakie, WY, of counsel.

Timothy Judson, Denver, CO, for plaintiff, The Arapaho Indian Tribe of the Wind River Reservation, Wyoming a/k/a Northern Arapaho Tribe.

Stuart B. Schoenburg, Attorney, Environmental and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant. Stephen Simpson, Attorney, Office of the Solicitor, Division of Indian Affairs, United States Department of the Interior, Washington, DC, of counsel.

### OPINION AND ORDER

HEWITT, Judge.

This is an action by the Eastern Shoshone Tribe (the Shoshone) and the Northern Arapaho Tribe (the Arapaho) (collectively, the Shoshone and Arapaho are referred to as the Tribes) for damages based on the United States' alleged breach of trust for mismanagement of the Tribes' natural resources up to the point of collection and with respect to defendant's handling of Tribal funds post-collection. *See* Eastern Shoshone and Northern Arapaho Tribes' Legal Bases for the Tribes' Theories of Recovery for Breach of Trust (Tribes' Bases) at 1. The Tribes in this consolidated action share an undivided interest in the Wind River Indian Reservation (the Reservation) in Wyoming including, but not limited to, the mineral and other resources on and under the Reservation. *Id.*

Before the court is Defendant's Motion and Supporting Memorandum Re: Statute of Limitations Issues (Def.'s Mot.) and the responsive briefing. Defendant asserts that the applicable statute of limitations, 28 U.S.C. § 2501, limits plaintiffs' recovery to a period of time beginning no earlier than October 10, 1973, that is, six years prior to the filing of the complaint in this action. The Tribes oppose defendant's motion on the basis that the statute of limitations is tolled as to their claims until defendant provides an accounting of their trust property as required by a series of appropriations enactments (the Acts).[2] *See* Response of the Eastern Shoshone and Northern Arapaho Tribes to United States' Motion RE Statute of Limitations Issues (Pls.' Resp.) at 10–11. For the following reasons, defendant's motion is DENIED.

2. The following is a complete list of the Acts since 1990: Act of November 5, 1990, Pub.L. No. 101–512, 104 Stat. 1915; Act of November 13, 1991, Pub.L. No. 102–154, 105 Stat. 990; Act of October 5, 1992, Pub.L. No. 102–381, 106 Stat. 1374; Act of November 11, 1993, Pub.L. No. 103–138, 107 Stat. 1379; Act of September 30, 1994, Pub.L. No. 103–332, 108 Stat. 2499; Act of April 26, 1996, Pub.L. No. 104–134, 110 Stat. 1321; Act of September 30, 1996, Pub.L. No. 104–208, 110 Stat. 3009; Act of November 14, 1997, Pub.L. No. 105–83, 11 Stat. 1543; Act of October 11, 2000, Pub.L. No. 106–291, 114 Stat. 922.

## I. Background

The litigation in this case is currently divided into four phases for adjudication. The first phase, as to which trial will be held beginning June 17, 2002, involves the Tribes' mineral trespass claims, as well as other claims, relating to specific sand and gravel pits on the Reservation. Pls.' Resp. at 2. The second phase involves extraction issues relating mostly to royalty accounting as to specific oil and gas deposits. *Id.* The third phase involves residual issues relating to oil and gas extraction, such as the failure to monitor leases. *Id.* at 2–3. The fourth phase involves the Tribes' trust money mismanagement claims. *Id.* at 3. The litigation is in various stages of discovery as to each of the phases; however, the legal questions raised in defendant's motion are ripe for judicial resolution at this juncture. Defendants Reply to Plaintiffs' Response to Defendant's Motion and Supporting Memorandum Re: Statute of Limitations Issues (Def.'s Reply) at 2.

Defendant's motion seeks to limit damages to a period of time beginning no earlier than October 10, 1973, that is, six years prior to the filing of the complaint in this action as provided by this court's statute of limitations. Def.'s Mot. at 2; 28 U.S.C. § 2501. Plaintiffs seek recovery for breaches of trust beginning in 1946 and continuing to the present date. *See* Petition filed October 10, 1979 at ¶¶ 10–11; Tribes' Bases at 29–30. Plaintiffs argue that the Acts, a series of Department of the Interior appropriations enactments listed above in note 2, toll the statute of limitations as to the entirety of the Tribes' claims, and particularly as to those claims arising out of events prior to October 10, 1973, until the Tribes receive an accounting of their trust monies and property. *See* Tribes' Bases at 30. Resolution of the legal questions raised in defendant's motion, namely, the interaction between the Acts and the court's statute

of limitations, will define both the scope of testimony to be received in the sand and gravel trial and the scope of discovery and testimony in the remaining phases of the litigation.

## II. Discussion

### A. Jurisdiction

■ The United States Court of Federal Claims has jurisdiction over the Tribes' claims pursuant to 28 U.S.C. § 1491 (1976) (the Tucker Act), and 28 U.S.C. § 1505 (1976) (the Indian Tucker Act). The Tucker Act and Indian Tucker Act waive the United States' sovereign immunity as to claims within their scope. *United States v. Mitchell*, 463 U.S. 206, 211–216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (*Mitchell II* ). It is established law that the United States is vested with a general trust responsibility with respect to tribal monies or properties "where the federal government takes on or has control or supervision over" such "monies or property." *Id.* at 225, 103 S.Ct. 2961 (quoting *Navajo Tribe of Indians v. United States*, 224 Ct.Cl. 171, 183, 624 F.2d 981 (1980)).[3] The statutes and regulations in the area of mineral resources, the subject matter of this litigation, provide sufficient control to vest the defendant with a fiduciary duty with respect to the Tribes' monies and properties. It is undisputed that this court has jurisdiction over the Tribes' claims that accrued after October 10, 1973; however, jurisdiction is disputed as to the Tribes' claims that might have accrued prior to October 10, 1973. *See* Defendant's Answer (Def.'s Ans.) at 1; *see also* Def.'s Mot. at 7–10.

### B. The Impact of the Acts on the Statute of Limitations

#### 1. The Issues

The principal legal issue to be resolved by the court is the precise impact of the Acts on

---

**3.** *See also, e.g.,* 25 U.S.C. § 162a(d), which provides in part:

The Secretary's proper discharge of the trust responsibilities of the United States shall include (but are not limited to) the following:
. . . .

(6) Establishing consistent, written policies and procedures for trust fund management and accounting.
. . . .
(8) Appropriately managing the natural resources located within the boundaries of Indian reservations and trust lands.
25 U.S.C. § 162a (d)(6), (8).

the statute of limitations. The general statute of limitations, 28 U.S.C. § 2501, provides that "[e]very claim of which the United States Court of Federal .Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." The most recent of the Acts states:

> [N]otwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim, including any claim in litigation pending on the date of the enactment of this Act, concerning losses to or mismanagement of trust funds, until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss
>
> . . . .

Department of the Interior and Related Agencies Appropriations Act, 2001, Pub.L. No. 106–291, 114 Stat. 922, 939 (2000).

It is undisputed that plaintiffs' claims involve trust funds and that the Tribes have yet to receive an accounting of their trust monies or property. The parties, however, disagree as to the precise impact of the Acts on the statute of limitations: whether the Acts preserve claims time-barred before the passage of the first of Acts and, if so, whether the Acts preserve only claims related to money already received by defendant or also preserve claims for monies that should have been received by the trust but were not received because of mismanagement of the Tribes' resources. Therefore, the legal arguments in defendant's motion and the responsive briefing can be divided into two main categories. First, the parties have made arguments as to whether the Acts preserve claims that, in absence of the Acts, might otherwise be time barred-that is, arguments

with respect to time. Second, the parties have made arguments with respect to the types of claims that Congress intended the Acts to cover.

The canons of statutory interpretation require the court to consider first the text of the Acts and any binding authority interpreting the text. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 46.01, at 113–129 (6th ed. 2000) (Singer); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself."). The second step of statutory construction, which is to be employed only in the case of ambiguity in the text of the statute and in the absence of binding interpretive authority, is to consider whether guidance is afforded by relevant legislative history. *See* 2A Singer, *supra,* § 48.01 at 411–415. The parties also argue various authorities and policies which may affect the court's reliance on one or another canon of construction or aspect of the legislative history. *See* Def.'s Reply at 7–10; Pls.' Resp. at 11.

The court notes at the outset that only two courts have ruled on the impact of the Acts on a general statute of limitations. In *Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation, et al.,*[4] No. 773–87L (Ct. Cl.1995), Order of April 11, 1995, to which plaintiffs refer, this court held in an unpublished order that the Acts toll the statute of limitations, even as to claims otherwise time-barred under 28 U.S.C. § 2501, until the plaintiff receives an accounting. *Id.* at 6–7. *Assiniboine,* however, is silent as to the types of claims that are tolled by the Acts. Defendant relies on *Cobell v. Babbitt,* 30 F.Supp.2d 24 (D.D.C.1998),[5] which disagreed

---

**4.** The parties contest the legal authority of *Assiniboine,* which is an unpublished order. *See* Def.'s Reply at 7 (arguing that Rule 52.1 of RCFC prohibits citing unpublished orders as authority). Rule 52.1 does, however, permit a party to cite an unpublished opinion as "persuasive authority." *Bennett v. United States,* 30 Fed.Cl. 396, 400 n. 7 (1994), *rev'd on other grounds,* 60 F.3d 843 (Fed.Cir.1995). Given the lack of prior judicial interpretation of the Acts as they affect the statute of limitations, the court finds that *Assiniboine* offers useful guidance in considering the legal

issues raised by defendant's motion. The court also notes that this court's proposed revised rules (available at the court's website: http://www.uscfc.uscourts.gov) do not propose to carry forward the prohibition on citation of unpublished opinions and orders that is contained in Rule 52.1 of the court's current rules.

**5.** The applicable statute of limitations in *Cobell* was 28 U.S.C. § 2401. An appeal in *Cobell* did not address the impact of the Acts on the statute of limitations; defendant's motion to dismiss in

with the decision in *Assiniboine* and held that the Acts do not revive claims already barred by the statute of limitations, but only "toll" the statute of limitations as to existing claims: claims arising no earlier than October 1, 1984, that is, six years prior to the passage of the first of the Acts. *Id.* at 43–44. The United States, in this case as well as in *Cobell*, concedes implicitly that the Acts may toll claims that have accrued within the period of time six years prior to the passage of the first of the Acts (1990). *See* Def.'s Reply at 4; *Cobell, supra*, 30 F.Supp.2d at 44 n. 25.

## 2. Defendant's Arguments

█ The central theme of defendant's argument is that this court has no jurisdiction to consider the Tribes' claims that involve alleged breaches of trust accruing prior to the court's six year statute of limitations. Def.'s Mot. at 7. The statute of limitations is a threshold jurisdictional question that cannot be waived. *See Hart v. United States*, 910 F.2d 815, 817 (Fed.Cir.1990); *Camacho v. United States*, 204 Ct.Cl. 248, 494 F.2d 1363, 1368 (1974). Defendant argues that preserving claims that accrued prior to the six year statute of limitations is tantamount to a waiver of sovereign immunity and that, as waivers of sovereign immunity, the Acts must be strictly construed. *See* Def.'s Reply at 5–6.

█ The court agrees that waivers of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Defendant asserts that the burden of proof is on the Tribes' to justify "tolling" of the statute of limitations. Def.'s Mot. at 9 (citing *Cochran v. United States*, 19 Cl.Ct. 455, 458 (1990)). *Cochran*, however, discusses the burden a plaintiff must meet in order to show that its claim has not yet accrued, but provides no guidance as to the interpretation of the text of any particular law, such as the Acts invoked by plaintiffs in this case, in relation to the statute of limitations. *See Id.*

With regard to the text of the statute, defendant argues that " '[a]bsent some clear, contrary expression of congressional intent that would lead to the conclusion that Congress meant to revive stale claims' ", plaintiffs' interpretation of the Acts is overbroad. Def.'s Reply at 7, (quoting *Cobell*, 30 F.Supp.2d at 44 (holding that "[n]either the plain language nor the legislative history of the tolling provision can support the plaintiffs' sweeping interpretation")). However, defendant provides no examples of cases where Congress did intend to revive "stale" claims as a means of comparison. Defendant simply states, "Had Congress had [sic] intended to revive old, time-barred claims it had more obvious ways of making that intent express . . . ." Def.'s Reply at 7.

Defendant in several places, does quote the language of the statute, but then stops short of addressing the meaning of the words contained in its quotation. For example, defendant characterizes the Acts as "tolling statutes" by quoting the following language from the Acts: " 'shall not commence to run on any claim concerning loss to or management of trust funds.' "[6] Def.'s Mot. at 14. This bare characterization, absent an explanation of the meaning of the words (or citation to authority explaining the meaning of the words), provides the court with little assistance in its main task: determining congressional intent from, in the first instance, the language of the statute.

Defendant argues that not only the "plain language" of the Acts but also their legislative history bars the revival of "stale" claims. Def.'s Reply at 8–9. According to defendant, Sen. Rep. No. 101–534, 101st Cong., 2d Sess. (relating to the initial enactment in 1990) expresses clear congressional intent to that effect. Senate Report No. 101–534 provides:

> Since the audit and reconciliation of such funds, as directed by the Committee, will require at least 5 years to complete, it is possible that the statute of limitations for any significant discrepancies uncovered

that case was denied on other grounds. *See generally Cobell v. Norton*, 240 F.3d 1081 (2001).

**6.** Defendant does not cite to a specific bill in which this language appears; but, the court notes that this language is common to all of the Acts.

during this process may have expired by the time such audits are completed. *Id.* at 65. Defendant argues that this language, and especially the short number of years ("5"), shows the limited reach of the Acts: to toll the statute of limitations as to existing claims but not to revive already time-barred claims. *Id.* at 18.

With regard to the types of claims preserved by the Acts, defendant argues that the Tribes' interpretation of the tolling provision in the Acts is also overbroad in the sense that the tolling provisions only apply to accounting claims and not to resource management claims. Def.'s Reply at 11. Defendant quotes the words "any claim, *including* any claim in litigation pending on the date of the enactment of the Act, concerning loss to or mismanagement of trust funds" and the words "until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss." *Id.* Defendant then states that "mismanagement" and "accounting" are the "key terms," but provides neither rationale nor authority for identifying those words as the "key terms" in the quoted text. *Id.* Nor does defendant explain how the words "losses to or" or the words "whether there has been a loss" function in the text of the statute. *Id.* at 10.

Defendant argues generally that the legislative history of the Acts supports its argument that the language should be strictly interpreted to exclude resource management claims from its coverage. Without analyzing particular examples, defendant states that "plaintiffs' recitation of the legislative history of relatively contemporaneous enactments . . . demonstrates that when Congress wishes to treat the trust management issue broadly, it knows how to do so." Def.'s Reply at 11.

Defendant largely relies on a policy argument for interpreting the Acts to exclude trust funds from resource mismanagement: that such a broad reading of the statute will result in "untoward consequences." *See* Def.'s Reply at 12. According to defendant, if the United States is put in a position of having to furnish an accounting for all of the Tribes' claims, "these accountings could never be completed in a reasonable time frame." *Id.* In response to defendant's policy concerns, the court notes that the United States has been under an obligation to provide such an accounting for more than a decade and the Tribes have yet to receive an accounting even limited to money actually collected by the defendant as trustee. The court is not in a position, on the basis of this briefing, to decide what is, or is not, a "reasonable time frame" for the furnishing of an accounting in these circumstances, except to note that ten years is already a fairly long time, and the Tribes can hardly be faulted as unreasonable for seeking what they view as their entire entitlement even if that might now take a bit longer.

3. Plaintiffs' Arguments

Plaintiffs counter defendant's central theme that this court lacks jurisdiction by arguing that the Acts are not waivers of sovereign immunity, but are merely "tolling statutes," thus permitting other than strict interpretation. Pls.' Resp. at 11. Further to this point, plaintiffs argue that where language in a statute contains "doubtful expressions" (which plaintiffs suggest is the case here), any ambiguity is to be resolved in favor of the Indians. *See id.* (citing *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985)) (stating that "standard principles of statutory construction do not have their usual force in cases involving Indian law").

As to the plain language of the statute, plaintiffs argue that the phrase "notwithstanding any other provision of law" appearing in Pub.L. No. 101–512, 104 Stat. 1915, 1929–1930 (1990) is a conclusive indication of congressional intent to remove sovereign immunity until the Tribes receive an accounting. *See* Tribes' Bases at 31–32, (citing *Ridgway v. Ridgway*, 454 U.S. 46, 73 n. 5, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981)). Plaintiffs then argue that statutory language appearing just before the contested language in Pub.L. No. 101–512 (addressing the preservation of claims) expresses clear congressional intent that "the accounting is to extend to the earliest possible date." *See* Tribes' Bases at 33 (quoting Pub.L. No. 101–512 104

Stat. at 1929 ("until the funds held in trust for all such tribes or individuals have been audited and reconciled to the earliest possible date")). Under the canons of statutory construction, this language, while not dispositive, is intrinsic evidence that may assist the court in interpreting the overall context of the legislation. *See* 2A Singer, *supra*, § 47.02 at 211–12.[7]

With respect to the types of claims covered by the Acts, plaintiffs argue that the language "any claim" in the Acts "could not be broader." Pls.' Resp. at 12. Plaintiffs also argue that the plain meaning of the term "accounting" is not limited to bookkeeping claims; rather, the term is a condition precedent to accrual of any of its claims, including trust management claims. Id. at 12. Arguing for a broad interpretation of the term accounting, plaintiffs highlight a Black's Law Dictionary definition of "accounting" as a "report of all items of property, income, and expenses prepared by a personal representative, trustee, or guardian and given to heirs, beneficiaries, and the probate court." *Id.* (quoting Black's Law Dictionary 19 (7th ed.1999)). Plaintiffs contend that Congress' use of the phrases "loss to or mismanagement of trust funds" and "such funds from which the beneficiary can determine whether there has been a loss" in the statute indicates that the United States is under a trust obligation to provide the Tribes with, "in essence, a determination of accounts receivable." Pls.' Resp. at 12.

Plaintiffs also suggest that legislative history of the Acts relating to the improvement in trust accounting supports the Tribes' argument that the Acts pertain also to resource management claims. Plaintiffs argue that a reading that excludes resource management claims from the Acts' coverage is inconsistent with the remedial purpose of the legislation demonstrated by the Acts' legislative history. Pls. Resp. at 13. In support of this argument, plaintiffs cite H.R.Rep. No. 103–158, 103rd Cong., 1st Sess. (1993), a House report leading up to the passage of Pub.L. No. 103–138, 107 Stat. 1379 (1994), providing:

With regard to the systems development effort, the Committee is aware that the General Accounting Office and the Intertribal Monitoring Association are analyzing *trust fund management functions* with the purpose of identifying functions that could be handled by an outside entity and those that should be conducted in house by the Bureau. This analysis is to include all Bureau and Departmental functions that affect trust accounts *including trust resource management, billing and collections,* investments, and accounting and reporting.

*See* Pls.' Resp. at 14 (quoting H.R.Rep. No. 103–158, at 55 (1993)).

Plaintiffs suggest also that (H.R.Rep. No. 102–499, 102nd Cong., 2d. Sess.1992) demonstrates congressional awareness of and overall discontent with "the United States' failure to lease lands, to reissue leases, to obtain fair market value, to collect delinquent rents, and to collect interest on late rental payment as part of the financial management problems." Pls.' Resp. at 14 (citing H.R.Rep. No. 102–499, at 9 (1992)); *see also* Tribes' Bases at 36.

The court notes that H.R.Rep. No. 102–499 is a general report that was compiled as part of the broader package of legislation aimed at reforming the government's discharge of its Indian trust responsibilities. *See* H.R.Rep. No. 102–499, at 1–5 (1992). This general report does not specifically deal with the adoption of any of the language in the Acts. Plaintiffs' citations to H.R.Rep. No. 102–499, therefore, do not assist the court in determining the meaning of the language contained in the Acts. However, H.R.Rep. No. 102–499 does provide general contextual support for plaintiffs' argument that the Acts are part of a broader remedial effort designed to alleviate long-standing problems associated with Indian trust management.

### 4. Effect of the Acts

██ Defendant urges that the Acts be viewed as waivers of sovereign immunity and

---

7. Plaintiffs cite no legislative history that applies exclusively to their argument that the Acts preserve previously time-barred claims. Plaintiffs' arguments based on legislative history are dis-

cussed below in relation to the types of claims that Congress intended to be within the purview of the Acts.

their scope interpreted in a strictly limited manner. Def.'s Mot. at 7. Plaintiffs urge that the Acts be viewed as part of a remedial effort by Congress on behalf of tribes and interpreted broadly to support a wider congressional program to redress breaches of trust. Pl.'s Reply at 13–14. The court believes that the parties' general approaches, while relevant, are (particularly in the case of defendant's briefing) insufficiently focused on the most basic principle of statutory interpretation, the plain meaning of the statute. *See* 2A Singer, *supra*, § 46.01, at 113–129; *Consumer Prod. Safety Comm'n*, 447 U.S. at 108, 100 S.Ct. 2051 ("[T]he starting point for interpreting a statute is the language of the statute itself.").

With respect to the reach of the Acts back in time to preserve claims, the court finds that the words "the statute of limitations shall not commence to run on any claim ... until the affected tribe ... has been furnished with the accounting of such funds from which the beneficiary can determine whether there has been a loss ..." operate to defer the accrual of "any claim ... until ... the accounting [is provided]." The court finds absolutely no ambiguity in the words of the statute. While both parties refer to the Acts as "tolling" enactments, the plain meaning of the text is that a claim within the scope of the Acts does not accrue until the accounting described in the Acts—that is, the accounting "concerning losses to or mismanagement of trust funds"—is provided.[8]

The statutory phrase "notwithstanding any other provision of law" appears to the court, as it does to plaintiffs, fully adequate to signal congressional awareness of the statutory framework, specifically 28 U.S.C. § 2501, and a corresponding determination on the part of Congress to preserve claims "notwithstanding" that framework. *See, e.g., Ridgway*, 454 U.S. at 73 n. 5, 102 S.Ct. 49.

This approach is consistent with judicial interpretation of a similarly lengthy period of claim preservation afforded by the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2401 (1994),[9] notwithstanding the generally applicable statute of limitations contained in 28 U.S.C. § 2401 and the context of sovereign immunity. Under the FTCA, a tort claim against the United States is barred "unless action is begun within six months ... of notice of a final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). However, the "failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant *any time thereafter*, be deemed a final denial of the claim." 28 U.S.C. § 2675(a) (emphasis added). Most courts construing this statute have found that if no final determination is rendered by the agency within six months after a claim is filed, the option to bring suit remains with the claimant and there is no time limitation on when that claimant can bring suit. *See Conn v. United States*, 867 F.2d 916, 918–19 (6th Cir.1989), *Parker v. United States*, 935 F.2d 176, 178 (9th Cir.1991) ("[Claimant] may institute his FTCA claim 'at any time.' ").

In arriving at that interpretation, the courts looked first at the plain meaning of the statute. In *Conn v. United States*, for example, the court found that "section 2675(a) *expressly provides* that if the agency fails to finally dispose of the claim within six months after filing ... [the claimant may exercise the option to bring suit] *at any time* after the six months has expired and there has been no [final] denial." 867 F.2d 916, 920–21 (6th Cir.1989) (emphasis added). The *Conn* court found that its interpretation did not place an unreasonable burden on administrative agencies. *Id.* at 921. "To avoid problems, an agency can simply deny the claim in such a manner as comports with [the applicable law] and thereby cause the six-

---

**8.** The distinction between "tolling" and "accrual" is evident in the definition of the words. "Accrue" is "[t]o come into existence as an enforceable claim or right." Black's Law Dictionary 21 (7th ed.1999). "The term accrue in the context of a cause of action means to arrive to commence," *id.*, whereas, a "tolling statute" is defined as a "law that interrupts the running of a statute of limitations in certain situations ...."

*Id.* at 1495. *See generally,* 1 Calvin W. Corman, *Limitations on Actions* § 6.1, at 370–71 (1991) (Corman) *and* 2 Corman § 8.2, at 2–3.

**9.** The court notes that this language was added to the statute in 1966 by Pub.L. No. 86–238, § 1(3), 73 Stat. 472 (July 18, 1966).

month period to begin to run." *Id.* The power to begin the running of the FTCA limitation statute rests directly in the hands of the agency, similarly, defendant here has the sole power to begin the running of the statute by furnishing an accounting in accordance with the Acts.[10]

The Court of Appeals for the Third Circuit has observed that, given the remedial nature of the FTCA, it is " 'illogical, if not inequitable' to construe to the detriment of plaintiffs a provision designed to benefit them." *Pascale v. United States*, 998 F.2d 186, 190 (3rd Cir.1993) (quoting *Hannon v. United States Postal Service*, 701 F.Supp. 386, 389 (E.D.N.Y.1988)). "It would be ironic if a provision designed to permit a claimant to pursue [its] remedy where the appropriate federal agency is dilatory ... would, instead, defeat [its] claim where the government delays...." *Id.* at 192. Given the remedial nature of the Acts, that observation appears applicable to this case as well.

This approach is also consistent with Indian trust doctrine. When the government exercises some control over the management of Indian resources, a trust relationship is created. *See generally United States v. Mitchell*, 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (*Mitchell I*) and 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (*Mitchell II*); *Navajo Nation v. United States*, 263 F.3d 1325, 1329 (Fed.Cir.2001); *White Mountain Apache Tribe v. United States*, 249 F.3d 1364, 1377 (Fed.Cir.2001). "[W]hen the United States is assigned control of the management of Indian resources and the duty to manage those resources, there is created a full fiduciary relationship with respect to that management, including all appurtenant trustee duties, obligations, and liabilities." *Navajo Nation*, 263 F.3d at 1329. This fiduciary duty exists "even when the government has less than total control of management of the resources ...." *Id.* In *White Mountain Apache Tribe*, the Federal Circuit applied the common law of trusts to hold that the United States had a trustee's duty to preserve the trust corpus, despite absence of specific statutory or regulatory language regarding a fiduciary relationship. 249 F.3d at 1378.

▪ With respect to the types of claims preserved by the Acts, the court finds that the Acts cover claims both for monies received in trust by defendant and thereafter mismanaged and to "losses to" the trust, including monies that should have been received by the trust but were not received because of mismanagement of the Tribes' mineral and other assets. The court's conclusion is based on the language of the Acts. The Acts preserve claims "concerning losses to or mismanagement of trust funds ...." Pub.L. No. 106–291, 114 Stat. 922, 939 (2000).

The use by Congress of the disjunctive "or" between the phrase "losses to" and the phrase "management of" the Tribes' trust funds indicates two different types of fiduciary breaches as to which Congress intended to preserve claims. It is obvious that "mismanagement of trust funds" is a particular type of fiduciary breach which would result in losses from the money already received in trust. In order to give meaning to the disjunctive phrase "losses to ... trust funds," the court concludes that Congress thereby indicated its intent to include within the scope of the Acts claims for monies that should have been received by the trust but were not received because of defendant's breach of its trust duty to "make the trust property productive" with respect to the Tribes' mineral and other assets. *See Restatement (Second) of Trusts* § 181 (1992) ("[T]rustee is under a duty to the beneficiaries to use reasonable care and skill to make the trust property productive in a manner that is consistent with the fiduciary duties of caution and impartiality."); *see also id.* § 176 (1959) (duty to use reasonable care and skill to preserve the trust property); *Id.* § 174 (1959) (duty to exercise reasonable care and skill); *Id.* § 172 (1959) ("[T]rustee is under a duty to the beneficiary to keep and render

---

10. In FTCA litigation in the Eighth Circuit, the government conceded that, in accordance with the plain meaning of the statute, there is no time limit for filing an FTCA action when an administrative claim is deemed to be denied under 28 U.S.C. § 2675(a) (1988) by virtue of an agency's failure to finally dispose of the claims within six months. *Taumby v. United States*, 919 F.2d 69, 70 (8th Cir.1990) (on rehearing).

clear and accurate accounts with respect to the administration of the trust"). If Congress had wished to limit the claims in the manner defendant suggests, it surely would have said "losses from mismanagement of trust funds" or some similar language more apt to that limited purpose.

Defendant's contrary view requires that the court focus exclusively on the words "mismanagement of trust funds." That approach appears to the court to be in conflict with the rule of statutory constructions that all words in a statute are to be given meaning. *See* 2A Singer, *supra*, § 46.06, at 181–196 ("It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.").

Although the court believes that the types of claims covered by the Acts can be discerned from the Acts' text itself, the court addresses briefly the policy arguments advanced by the parties.

In response to defendant's argument that the Acts should not be read to revive "stale" claims, the court notes that the apparent purpose of the Acts is to preserve claims otherwise stale. The court also notes that Congress has not shown itself at all unwilling to address and provide remedies for tribes even when the grievances to be redressed arose in the earliest days of this country, implicating problems of proof reaching back to the use and occupancy of aboriginal lands in centuries before Western explorations—matters potentially more complex and greatly more remote in time than the evidence in this case. *See, e.g.,* Pub.L. No. 104–198, 110 Stat. 2418 at 418 (September 18, 1996).

The court's interpretation does not mean, of course, that the phrase "losses to . . . trust funds" in the Acts encompasses every possible fiduciary breach that could be complained of. The phrase points to the amounts of money that should have been received in trust if the trustee had performed its duties. The plaintiffs continue to carry the burden of proof as to the existence of losses within the scope of the Acts.

III. Conclusion

For the foregoing reasons, defendant's motion is DENIED. Evidence of "losses to or mismanagement of trust funds" may be discovered and offered at trial with respect to the period 1946–1973.

IT IS SO ORDERED.