The OSAGE NATION and/or Tribe of Indians of Oklahoma, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 00–169 L.

United States Court of Federal Claims.

July 28, 2003.

Wilson K. Pipestem, Washington, DC for plaintiff.

R. Anthony Rogers, with whom was Thomas L. Sansonetti, Assistant Attorney General, Environment & Natural Resources Division, U.S. Department of Justice, Washington, DC for defendant. Stephen Simpson, U.S. Department of Interior, Washington, DC, and Alan Woodcock, U.S. Department of Interior, Tulsa, OK, of counsel.

*OPINION AND ORDER*

HEWITT, Judge.

Plaintiff, the Osage Nation and/or Tribe of Indians of Oklahoma (Osage or Tribe), seeks damages from defendant for breach of fiduciary duty in the mismanagement of tribal trust funds and for failure to account. Complaint (Compl.) ¶ 4. Before the court is defendant's motion to dismiss or, in the alternative, defendant's motion for partial summary judgment for lack of jurisdiction.[1] *See* Defendant's Motion to Dismiss (Def.'s Mot.) at 2. For the following reasons, defendant's mo-

tion to dismiss is DENIED in part and GRANTED in part.[2]

I. Background

In 1906, Congress passed the Osage Allotment Act of 1906 (the 1906 Act), 34 Stat. 539. Section four of the 1906 Act created a trust fund whereby "all funds belonging to the Osage tribe, and all moneys due, and all moneys that may become due, or may hereafter be found to be due the said Osage tribe of Indians, shall be held in trust by the United States." 34 Stat. 539, 544 § 4. Section four further provided that

the royalty received from oil, gas, coal, and other mineral leases ... shall be placed in the Treasury of the United States to the credit of the members of the Osage tribe of Indians as other moneys of said tribe are to be deposited under the provisions of this Act, and the same shall be distributed to the individual members of said Osage tribe according to the roll provided for herein, in the manner and at the same time that payments are made of interest on other moneys held in trust for the Osages by the United States ....

*Id.* § 4(2). In addition to the mineral royalties, the trust included funds from the sale of Osage lands in Kansas pursuant to an 1865 treaty. *See* Treaty of September 29, 1865, 14 Stat. 687.

Plaintiff alleges that monies "in excess of 8 million dollars" were "held by the United States 'in escrow' for almost ten (10) years, prior to payment and transfer of title to the lands ... to the Osage Nation from approximately 1873 to 1883." Compl. ¶ 12. Plaintiff further contends that defendant "has exercised involuntary, pervasive management and

1. The court has before it Defendant's Motion to Dismiss (Def.'s Mot.), Defendant's Proposed Findings of Uncontroverted Fact (Def.'s Facts), Plaintiff's Corrected Response to Motion to Dismiss and Brief in Support (Pl.'s Resp.), Plaintiff's Statement of Uncontroverted Material Facts (Pl.'s Facts), Plaintiff's Response [to] Defendant[']s Proposed Findings of Uncontroverted Fact (Pl.'s Resp. Facts), Defendant's Reply to "Plaintiff's Corrected Response to Motion to Dismiss and Brief in Support" (Def.'s Reply), Defendant's Post–Argument Brief on Motion to Dismiss (Def.'s Brief), and Plaintiff Osage Tribe's Post–Argument Brief on Motion to Dismiss (Pl.'s Brief). The court does not address defendant's

alternative motion for partial summary judgment because it was not necessary to rely on evidence outside of the pleadings.

2. Defendant's motion to dismiss plaintiff's demand for a pre-liability accounting and plaintiff's claims for declaratory relief is GRANTED. Plaintiff conceded, both in briefing and at oral argument, that this court does not have jurisdiction over claims for a pre-liability accounting or for declaratory relief. *See* Pl.'s Resp. at 1, 20. *See also* April 3, 2003 Oral Argument Transcript (Tr.) at 7–8, 111–12.

complete control over the mineral assets of the Osage," but has "never rendered to [plaintiff] an accounting ... of the Osage assets held by [defendant]." *Id.* ¶¶ 12, 14.

In 1996, plaintiff received a report prepared by Arthur Andersen and Company pursuant to the Tribal Trust Funds Reconciliation Project (Arthur Andersen Report) which attempted to reconcile the trust fund for the time period from July 1, 1972 to September 30, 1992. Compl. ¶¶ 16–17; Def.'s Mot. at 5. Plaintiff argues that this report "falls far short of what the federal law required in 25 U.S.C. § 4044" for the reconciliation of plaintiff's trust fund.[3] Compl. ¶ 17.

In March, 2000, plaintiff filed this case alleging that the publication of the Arthur Andersen Report was "unconscionable" and does not satisfy defendant's obligation to reconcile plaintiff's trust fund. Compl. ¶¶ 16–23. Plaintiff maintains that the Arthur Andersen Report "concludes that as of September 30, 1994, the Osage were owed a minimum of $791,046.37, due to the errors of [defendant] in managing tribal funds," Compl. ¶ 16, but that in actuality the amount unreconciled is "in excess of $2.5 billion dollars." *Id.* ¶ 25 (emphasis omitted).

## II.   Discussion

### A.   Standard of Review

Defendant moves to dismiss plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the United States Court of Federal Claims (RCFC). *See* Def.'s Mot. at 1–2. Plaintiffs bear the burden of establishing that subject matter jurisdiction exists. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 188–89, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998). "A well-pleaded allegation in the complaint is sufficient to overcome challenges to jurisdiction." *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325

(Fed.Cir.1997). But if the truth of jurisdictional facts is challenged, then the court may consider relevant evidence in order to resolve the factual dispute. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988).

### B.   Standing

■   Standing is a threshold inquiry that plaintiff must establish in order to make out a "case or controversy" within the meaning of Article III of the Constitution. *See Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, —— U.S. ——, ——, 123 S.Ct. 2026, 2034, 155 L.Ed.2d 1017 (2003); *E. Paralyzed Veterans Ass'n v. Sec'y of Veterans Affairs*, 257 F.3d 1352, 1356 (Fed.Cir.2001) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). A plaintiff " 'must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief' " in order to establish standing. *Nat'l Park Hospitality*, 123 S.Ct. at 2034 (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).

Defendant moves to dismiss plaintiff's claims to the extent plaintiff seeks damages on behalf of individual headright interests not held by the Tribe. Def.'s Mot. at 27. Defendant asserts that plaintiff does not have standing to bring a claim for the approximately 98.75% of headright interests that it does not own because the Tribe "cannot claim that it has 'personally suffered some actual or threatened injury' as a [f]ederally-recognized Tribe." *Id.* at 29. Defendant argues that the headright holders, not the Tribe, suffer any damages that result from the mismanagement of mineral royalties because, as required by statute, the funds are ultimately distributed to those individuals. Def.'s Mot. at 15–16.

Plaintiff responds that it has standing because "the Tribe as trust beneficiary has suffered concrete injury for all mismanaged

---

3.   Section 4044, enacted in 1994 by Pub.L. 103–412, requires the Secretary to "transmit ... a report identifying for each tribal trust fund account for which the Secretary is responsible a balance reconciled as of September 30, 1995." 25 U.S.C. § 4044 (2001). The report must include "attestations by each account holder that ... the Secretary has provided the account holder with as full and complete accounting as possible of the account holder's funds to the earliest possible date." *Id.*

funds paid to the Tribe's trust accounts." Pl.'s Brief at 1. Plaintiff maintains that headright holders are not in fact "the real parties in interest" because the Tribe, not the headright holders, is the direct trust beneficiary.[4] *Id.* at 8. The court agrees.

Section four of the 1906 Act creates a trust fund for the Tribe and obliges the United States to hold mineral royalties in trust for "members of the Osage tribe." 34 Stat. 539, 544 §§ 4(1) and 4(2). These mineral royalties are then to be distributed "to the individual members... in the manner and at the same time that payments are made of interest on other moneys held in trust for the Osage[ ]." *Id.* § 4(2). Under the 1906 Act, the tribal trust fund is credited to individual members of the Osage tribe "on a basis of a pro rata division among the members" and interest payments are made on a quarterly basis. *See id.* § 4(1).

Defendant concedes that the funds in question are deposited first in the tribal trust fund account where they remain for "approximately one calendar quarter" before being distributed to the headright owners. *See* Def.'s Mot. at 28; Tr. at 40. In addition, as defendant itself points out, the funds that are distributed to the headright owners from the tribal trust fund are "net of a small portion retained for the Osage Tribal operations and a portion paid for the Oklahoma gross receipts tax." Def.'s Mot. at 28 n.11. Defendant acknowledges that the additional step of determining what amount is owed to each headright holder also takes place while the funds are in the tribal trust fund. *See* Tr. at 40.

The court finds that, under the terms of the 1906 Act relating to the tribal trust fund, there is sufficient injury to the Tribe to establish standing. The mineral royalties at issue go first into a tribal trust fund account where they stay for at least one quarter of a calendar year before being transferred to individual headright owners. The responsibility of the government is to the tribal trust fund account. The tribal trust fund is then responsible for the ultimate distribution to the individual headright owners. Importantly, the alleged mismanagement of the mineral royalties is described as taking place when the funds were within the tribal trust fund. *See* Tr. at 73–75; Pl.'s Brief at 3. The mismanagement is not alleged to take place at the point of distribution of the funds to the individual headright holders. *See id.* Although the Tribe may have no further interest or claim to the funds once they are distributed to the headright owners, the court finds that the Tribe does have both an interest in and a claim to the funds when those funds are within the tribal trust account that was established by the 1906 Act. Moreover, defendant's concern that any damages awarded to the Tribe would not "flow down" to the headright holders, Tr. at 41, is addressed in the first subsection of Section 4 of the 1906 Act which requires that "all moneys found to be due said Osage tribe of Indians on claims against the United States, after all proper expenses are paid, shall be ... placed to the credit of the individual members of the said Osage tribe on a basis of a pro rata division ...." 34 Stat. 539, 544 § 4(1).

### C. Statute of Limitations

■ Defendant also seeks to dismiss all of plaintiff's claims accruing before October 1, 1984. Def.'s Mot. at 1. Defendant argues that either claims accruing before March 31, 1994 are barred by the statute of limitations, 28 U.S.C. § 2501 or, assuming that the tolling provisions of the Department of the Interior and Related Agencies Appropriations Acts (Appropriations Acts)[5] apply to plain-

---

4. Plaintiff also asserts that the Tribe has standing under the doctrine of *parens patriae* which, according to plaintiff, allows a sovereign "to bring an action on behalf of the collective interest of its citizens." Pl.'s Brief at 9–10. The court does not reach the issue of *parens patriae* because it finds that on the basis of factual allegations in the complaint which are not challenged by defendant, plaintiff has suffered sufficient injury to establish standing.

5. The following is a complete list of the Acts since 1990: Act of November 5, 1990, Pub.L. No. 101–512, 104 Stat. 1915; Act of November 13, 1991, Pub.L. No. 102–154, 105 Stat. 990; Act of October 5, 1992, Pub.L. No. 102–381, 106 Stat. 1374; Act of November 11, 1993, Pub.L. No. 103–138, 107 Stat. 1379; Act of September 30, 1994, Pub.L. No. 103–332, 108 Stat. 2499; Act of April 26, 1996, Pub.L. No. 104–134, 110 Stat. 1321; Act of September 30, 1996, Pub.L. No.

tiff's claims, that claims accruing before October 1, 1984 are barred by 28 U.S.C. § 2501. *See id.* at 6. Defendant also contends that claims accruing before August 13, 1946 are time-barred by Section 12 of the Indian Claims Commission Act, 60 Stat. 1052 (formerly 25 U.S.C. § 70k, omitted as terminated pursuant to 25 U.S.C. § 70v) (ICC Act).[6] *See* Def.'s Mot. at 6.

Plaintiff argues that its claims are timely because under the Appropriations Acts plaintiff's claims do not accrue until an accounting of the Tribe's trust fund is provided by defendant. Pl.'s Resp. at 4, 6–9. Plaintiff argues further that the Appropriations Acts address "all trust claims" and therefore even claims which predate 1946 do not accrue until plaintiff receives an accounting from defendant. *Id.* at 9–11.

The applicable statute of limitations for filing suit in the Court of Federal Claims is six years. 28 U.S.C. § 2501 (1994). The statute provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." *Id.* The six-year limitations period for actions against the United States "is a jurisdictional requirement attached by Congress" that must be strictly construed. *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576–77 (Fed.Cir.1988); *see also Franconia Assocs. v. United States*, 240 F.3d 1358, 1362 (Fed.Cir. 2001)[7] (quoting *Hart v. United States*, 910 F.2d 815, 817 (Fed.Cir.1990)) ("The six-year statute of limitations acts as 'an express limitation on the Tucker Act's waiver of sovereign immunity.' "); *Seldovia Native Ass'n v. United States*, 144 F.3d 769, 774 (Fed.Cir. 1998) (stating that "statute of limitations issues . . . are jurisdictional").

To defeat defendant's motion to dismiss this case, plaintiffs must establish "jurisdictional timeliness." *Alder Terrace*, 161 F.3d at 1377 (citing *McNutt*, 298 U.S. at 189, 56 S.Ct. 780). Plaintiff cannot rely merely on the allegations in the complaint if jurisdiction is challenged. *Reynolds*, 846 F.2d at 747. Because plaintiff bears the burden of proof by a preponderance of the evidence, it must offer relevant, competent evidence to show that it filed suit within six years of the accrual of its claims. *See* 28 U.S.C. § 2501; *Reynolds*, 846 F.2d at 748; *Martinez v. United States*, 48 Fed.Cl. 851, 857 (2001).

### 1. Appropriations Acts

Defendant acknowledges. that the Appropriations Acts "may have conditionally tolled the running of [28 U.S.C. § 2501] on claims that had not already expired by October 1, 1990, until such time as the United States furnishes the Osage Tribe an accounting of its trust funds." Def.'s Mot. at 2. Therefore, for the purposes of this motion, defendant argues that only plaintiff's claims that "had not gone stale as of October 1, 1984, six years before the first effective tolling[,]" may be maintained. *See id.* at 7.

The most recent of the Appropriations Acts states:

> [N]otwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim, including any claim in litigation pending on the date of the enactment of this Act, concerning losses to or mismanagement of trust funds, until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss
> . . . .

against [defendant]." Def.'s Mot. at 20. In later briefing, defendant asked the court to defer any ruling on this notice issue because it required further factual development and was therefore inappropriate for summary disposition. Def.'s Reply at 13–14.

---

104–208, 110 Stat. 3009; Act of November 14, 1997, Pub.L. No. 105–83, 11 Stat. 1543; Act of October 11, 2000, Pub.L. No. 106–291, 114 Stat. 922; Act of February 20, 2003, Pub.L. No. 108–7, 117 Stat. 11. *See* Pl.'s Resp. at 4 n. 1.

**6.** Defendant also argued that plaintiff's claims should be barred because plaintiff had notice since 1979 of various deficiencies and discrepancies in defendant's management of its tribal trust funds and that notice was "certainly enough to put the Osage on inquiry of any actionable claims

**7.** This decision was reversed in part on other grounds by *Franconia Assocs. v. United States*, 536 U.S. 129, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002).

Consolidated Appropriations Resolution, 2003, Pub.L. No. 108–7, 117 Stat. 11 (2003).

In a recent decision this court addressed the same statute of limitations issue with regards to mismanagement of tribal trust funds that took place during the period 1946–1973. *See Shoshone Indian Tribe of the Wind River Reservation, Wyoming v. United States,* 51 Fed.Cl. 60, 67 (2001), *appeal docketed,* No. 03–5036 (Fed.Cir. Dec. 6, 2002). In that case, the court held that "the plain meaning of the text is that a claim within the scope of the [Appropriations] Acts does not accrue until the accounting described in the Acts— that is, the accounting 'concerning losses to or mismanagement of trust funds'— is provided." *Id.* Defendant's arguments in this case, which closely follow the arguments addressed in *Shoshone,* compare *Shoshone,* 51 Fed.Cl. at 64–65 *with* Def.'s Mot. at 10–22 *and* Def.'s Reply at 2–13, have not persuaded the court to reconsider its previous ruling or the rationale therefor.

The Arthur Andersen Report, the first reconciliation completed by defendant that could possibly comply with the standards contemplated by the Appropriations Acts, was submitted to the Tribe on December 31, 1995.[8] Compl. ¶ 17. In 2002, Congress passed another statute which addressed the statute of limitations with regard to tribal claims. *See* Act of March 19, 2002, Pub.L. 107–153, 116 Stat. 79 (2002 Act). The 2002 Act states:

Notwithstanding any other provisions of law, for purposes of determining the date on which an Indian tribe received a reconciliation report for purposes of applying a statute of limitations, any such report provided to or received by an Indian tribe ... shall be deemed to have been received by the Indian tribe on December 31, 1999.

*Id.*[9] Therefore, assuming the Arthur Andersen Report qualifies as a reconciliation report, plaintiff's claims as to "losses or mismanagement of trust funds" accrued on December 31, 1999 and plaintiff's complaint was filed well within this court's six-year statute of limitations.[10]

2. Indian Claims Commission (ICC) Act

█ Defendant argues that this court lacks subject matter jurisdiction over plaintiff's money damages claims against the United States accruing prior to August 13, 1946. Def.'s Mot. at 23 (citing Section 12 of the ICC Act, 60 Stat. 1052 (formerly 25 U.S.C. § 70k)). Defendant contends that the ICC Act "conferred exclusive jurisdiction on the ICC over all Indian claims against the United States that accrued before the date of the [ICC Act's] enactment." *Id.* Defendant claims that the ICC Act provided that any claim that had accrued before August 13, 1946 "could not 'thereafter be submitted to any court or administrative agency for consideration' " if it was not filed with the ICC by August 13, 1951. *Id.* (quoting ICC Act § 12, 60 Stat. 1052; *Navajo Tribe of Indians*

---

8. Plaintiff argues that the Arthur Andersen Report was not the "full and complete accounting" that was required by the statute, Pl.'s Resp. at 8; Tr. at 90, but accepts, for the purpose of this motion, that the Arthur Andersen Report is the earliest possible accounting received by the Tribe. *See id.*

9. Although the text of the 2002 Act does not specifically refer to the Appropriations Acts, the court finds that the term "reconciliation reports" and the reference to 25 U.S.C. § 4044, which requires "a report identifying for each tribal trust fund account for which the Secretary is responsible a balance reconciled as of September 30, 1995", 25 U.S.C. § 4044, are sufficient to indicate the intent of Congress to reference the accounting of trust funds required by the Appropriations Acts. *See* 2B Norman J. Singer, Sutherland Statutory Construction § 51.02 at 176 (6th ed. 2000) ("It is assumed that whenev-

er the legislature enacts a provision it has in mind previous statutes relating to the same subject matter.").

10. The Arthur Andersen Report sought "to reconcile Osage trust accounts for the period July 1, 1972, to September 30, 1992." Def.'s Mot. at 5. The fact that this example of a "reconciliation report" covered a period far earlier than 1984, the year defendant argues that plaintiff's claims go stale, *id.* at 7, supports the court's view that the statute of limitations under the Appropriations Acts was intended to encompass and preserve claims under the accrual concept and not to bar claims relating to periods before 1984, as defendant urges. *See also* 25 U.S.C. § 4044(2)(A) (2002) (requiring the Secretary to "provide[] the account holder with as full and complete accounting as possible of the account holder's funds *to the earliest possible date.*") (emphasis added).

**398**

*v. New Mexico,* 809 F.2d 1455, 1461 (10th Cir.1987)).

Plaintiff argues that the Appropriations Acts "unequivocally spoke to all trust claims, not just those resulting from actions taken by [d]efendant after 1946." Pl.'s Resp. at 9. Plaintiff points out that Congress did not limit the time frame of defendant's accountability to the account holders of the trust funds. *Id.* at 10. Plaintiff contends that the language "notwithstanding any other provision of law..." indicates Congress' intent to not "cut off an Indian Tribe's ability to make a claim reaching back to earliest times if the government has not provided the Tribe with an accounting." *Id.* (emphasis omitted).

The ICC Act established the Indian Claims Commission (Commission) "to provide a monetary damages remedy against the United States for wrongs allegedly committed by the United States in its dealing with the Indian tribes." *Catawba Indian Tribe of S.C. v. United States,* 24 Cl.Ct. 24, 29 (1991) (citing 60 Stat. 1052 (formerly 25 U.S.C. § 70k)). Section 12 of the ICC Act states:

> The Commission shall receive claims for a period of five years after the date of the approval of this Act and no claim existing before such date but not presented within such period may thereafter be submitted to any court or administrative agency for consideration, nor will such claim thereafter be entertained by the Congress.

60 Stat. 1052 § 12. Courts have consistently held that claims "accruing before August 13, 1946" and not filed with the Commission by August 13, 1951 "could not otherwise be submitted to any court, administrative agency or Congress." *Catawba Indians,* 24 Cl.Ct. at 29; *Navajo Tribe of Indians v. New Mexico,* 809 F.2d at 1460–61. Because plaintiff's claims that concern "losses to or mismanagement of trust funds" did not accrue before December 31, 1999, the court finds that they are not barred by the ICC Act.

■ As in *Shoshone,* the court finds that the language "notwithstanding any other provision of law" is a sufficient signal to indicate congressional awareness of an existing statutory framework and is also a determination to preserve claims "notwithstanding" that framework. *See Shoshone,* 51 Fed.Cl. at 67

(citing *Ridgway v. Ridgway,* 454 U.S. 46, 73 n. 5, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981)); *see also* 2B Singer, Sutherland Statutory Construction § 51.02 at 176 ("It is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter."). Furthermore, the court notes that Section 4044, which identifies the requirements for the reconciliation reports, states that each report must include "as full and complete accounting as possible of the account holder's funds to the earliest possible date." 25 U.S.C. § 4044(2)(A). The court finds that the language "to the earliest possible date" to be further indication of the intent of Congress to allow Indian tribes to file tribal trust fund mismanagement claims within six years after an accounting of the trust fund is furnished to the Tribe no matter when the mismanagement may have occurred.

**III. Conclusion**

For the foregoing reasons, defendant's motion to dismiss is DENIED as to standing and statute of limitations and GRANTED as to plaintiff's claims for pre-liability accounting and declaratory relief.

IT IS SO ORDERED.